McLaughlin v. Ford.

Opinion delivered June 8, 1925.

1. STATUTES—CONSTRUCTION OF AMENDATORY ACT.—A statute amending a prior act from and after its passage becomes a part of the prior act and stands with reference to future transactions as though the act had originally been enacted in the amended form.

2. STATUTES—GENERAL AND SPECIAL STATUTES DISTINGUISHED.—The difference between a general and special statute is that a general statute applies to all of a class, while a special statute applies to one or two or a part of a class only.

3. STATUTES—GENERAL STATUTES.—To make a law applicable to municipal corporations general, it is not necessary that it should operate upon all cities and towns within the State, but it is sufficient if it applies to all cities and towns coming within the designated class.

4. STATUTES—GENERAL AND SPECIAL STATUTES.—In determining whether a statute is general or special, the form of the statute does not control, and a statute in the form of a general law would be a special act if it could apply only to one city or town.

5. STATUTES—CLASSIFICATION OF MUNICIPAL CORPORATIONS.—The Legislature may classify counties, cities and towns according to population, as such classification rests upon substantial differences in situation and needs.

6. STATUTES—GENERAL ACT.—Although Acts 1913, p. 48, and the act of the Special Session of 1923, amendatory thereof, providing for a commission form of government for cities of the first class, applied to those cities only which might have a population of 25,000 or more, according to the last census, such acts were not special, but were applicable to all cities which in the future might have the requisite population.

7. MUNICIPAL CORPORATIONS—VALIDITY OF ORDINANCES.—Municipal ordinances contrary to the general laws of the State are void.

8. MUNICIPAL CORPORATIONS—POWERS OF CITY COMMISSION.—Under statutes authorizing a city commission to exercise all the functions usually exercised by city councils, such commission is authorized to fix the salaries of employees of the city, which may be done either by resolution or ordinance.

Appeal from Sebastian Chancery Court, Fort Smith District; J. V. Bourland, Chancellor; affirmed.

STATEMENT OF FACTS.

Appellants, who are citizens and taxpayers of the city of Fort Smith, Arkansas, brought this suit in equity

against certain persons respectively named as mayor, commissioners, city attorney, city clerk, city treasurer, and chief of police of the city of Fort Smith, to enjoin them from receiving an excess salary in these various offices, and to account for the excess salaries already received by them.

According to the allegations of the complaint, the Legislature of 1913 provided for a commission form of government for cities of the first class. Acts of 1913, p. 48. The city of Fort Smith complied with the terms of the act and organized under its provisions a commission form of government. The Legislature at its special session in October, 1923, amended § 12 of the act above referred to so as to increase the salary of the officers of cities of the first class which have a population of 25,000 people or more.

The defendants filed a demurrer to the complaint, which was sustained by the court. The plaintiffs were given leave to amend their complaint, but declined to do so, and expressly elected to stand upon their complaint. It was therefore decreed that the complaint of the plaintiffs be dismissed for want of equity.

To reverse that decree, the plaintiffs have duly prosecuted an appeal to this court.

*T. S. Osborne,* for appellant.

*Sam R. Chew, G. L. Grant, A. M. Dobbs* and *Geo. W. Dodd,* for appellee.

HART, J., (after stating the facts). The appeal in this case involves the construction to be given to §§ 11 and 12 of the acts of 1913, and § 2 of the special Acts of 1913 above referred to.

So much of § 11 as is necessary to a decision of the case reads as follows:

"Section 11. The board of commissioners shall, at the first regular meeting after the election of its members, or as soon as practicable thereafter, appoint by a majority vote a city clerk and attorney or attorneys for the city, a city engineer, chief of police, city physician,

chief of fire department and such other officers and assistants as shall be provided for by ordinance and necessary to the proper and efficient conduct of the affairs of the city, and shall prescribe the powers and duties of such officers and employees; may assign particular officers and employees to one or more of the departments, may require any officer or employee to perform duties in two or more departments, and may make such other rules and regulations as may be necessary and proper for the efficient and economical conduct of the business of the city."

Section 12 reads as follows:

"Section 12. The compensation of the mayor and commissioners for all services shall be as follows:

"The mayor shall receive an annual salary of twenty-four hundred ($2,400) dollars, and each commissioner an annual salary of two thousand ($2,000) dollars, until otherwise provided by law; such salaries shall be payable in equal monthly installments, and no salaries of any such officers shall ever be increased or diminished during the time for which he is elected, or after the primary elections for their nominations have been held. Every other officer or assistant shall receive such salary or compensation as shall by ordinance be provided, payable in equal monthly installments, to be fixed by the board, and shall be payable monthly, or at such periods as the board shall determine. Until fixed by the board the salaries of all other officers and employees in force prior to the first primary election shall continue." Acts of Arkansas, 1913, pp. 63-65.

The amendatory act which was approved October 10, 1923, reads as follows:

"Section 12. The compensation of the mayor and commissioners for all services shall be as follows:

"The mayor shall receive an annual salary of twenty-four hundred ($2,400) dollars, and each commissioner an annual salary of two thousand dollars ($2,000), until otherwise provided by law; such salaries shall be payable

in equal monthly installments; provided, that in cities which have a population of 25,000 or more according to the latest census taken by authority of the United States government the mayor shall receive an annual salary of $3,000, and each commissioner shall receive an annual salary of $2,700, payable monthly as aforesaid. Every other officer or assistant shall receive such salary or compensation as shall by ordinance be provided, payable in equal monthly installments, or at such period as the board shall determine. Until fixed by the board, the salaries of all other officers and employees in force prior to the first primary election shall continue." Acts of Arkansas, October, 1923, Special Session, p. 119.

The record shows that the defendants were respectively mayor, commissioners, city attorney, city clerk, city treasurer, and chief of police of the city of Fort Smith, when the last United States census was taken, and it was ascertained by that census that the city had a population of more than 25,000 people. Since that time they have received the increase of salary provided by the amendatory act. The purpose of this lawsuit on the part of the taxpayers is to prevent them from receiving said increase of salary in the future and to compel them to account for that which has already been received by them.

The amendatory act under which they claim the increase in salary, was approved October 10, 1923, which was less than thirty days from the 17th day of September, 1923, which was the date on which the governor issued his proclamation for the special session. Hence they claim that the act is void under the rules of law announced in *Booe* v. *Road Improvement District No. 4,* 141 Ark. 140.

In that case it was held that the requirement of the Constitution of at least thirty days' notice to be given of the intention to apply for a local bill is mandatory, and that, where the record shows that thirty days did not elapse from the date of the issuance of the governor's proclamation for a special session until the date of the

passage of the bill, such special bill will be held to be unconstitutional because the notice required by the constitution could not have been given. On the other hand, the defendants seek to uphold the decree of the chancery court on the ground that the amendatory act approved October 10, 1923, became a part of the act of 1913, and is a general act.

In this connection it may be stated that the amendatory provision of the special session of 1923 from and after its passage became a part of the act of 1913, and in its relation to the sections of that act affected by it, stood with reference to future transactions as though the act had originally been enacted in the amended form. *Mondschein* v. *State,* 55 Ark. 389; and *Abney* v. *Warren,* 143 Ark. 572.

Therefore, the question is presented whether the provisions of the original act as it stands after the amendatory section is introduced is a general or special act. The difference between a general and special statute is that a general law applies to all of a class, while a special statute applies to one or two or a part of a class only. *L. R. & F. S. Ry. Co.* v. *Hanniford,* 49 Ark. 291, and *Little Rock* v. *North Little Rock,* 72 Ark. 195.

In the case last cited the court said to make a law general it is not necessary that it should operate upon all cities and towns in the State; but that it is sufficient if it applies to all towns and cities coming within the designated class. The court recognized, however, that the form of the statute does not control, and that a statute in form of a general law would be a special act if it could apply only to one city or town in the State. These general principles of law are in accord with the general rule as announced in the courts of last resort of the various States. The validity of the acts in which counties and cities have been classified according to population, resting on substantial differences in situation and needs have been generally recognized. One of the reasons for sustaining a classification on the basis of popu-

lation is that those having a small population may ulti-
mately have one much larger, and on that account have
need for more officers, and also may be required to pay
larger salaries in order to secure more efficient service.

To say that a general law cannot be passed to gov-
ern and regulate cities having a certain designated pop-
ulation or more, because only one city of that class exists,
is to hold that no law can be passed to provide for future
wants or necessities. Cities and counties are recognized
in our Constitution as governmental sub-divisions, and
each one has its appropriate part in the administration of
the local government. Municipal corporations can exer-
cise only the powers which the Legislature confers, and
these may be enlarged or abridged, or entirely withdrawn
at its pleasure.

If the power to classify and regulate the subject of
cities generally be admitted, the question of local legis-
lation is at an end. The reason is that, although it may
happen that but one city may fall within the class named
by the Legislature, it does not follow that other cities may
not in the future come within the class and thereby be
governed by the provisions of the act. If the power to
classify cities according to population for purposes of
regulation exists, that ends the matter. Our Constitution
provides for the organization of cities (which may be
classified) and incorporated towns. Section 3, article
12, of the Constitution of 1874.

As above stated, if the power to classify exists, it is
political or legislative and not judicial. It may be, as
contended by counsel for the plaintiffs, that Fort Smith is
the only city in the State which falls within the pro-
visions of the original act and the amendatory act; but,
when the provisions of both acts are considered, it will be
readily seen that other cities may come within the pro-
visions of the act in the future.

The discovery of oil and gas and other minerals in
certain localities causes towns and cities to spring up in
an almost incredibly short space of time. Hence the Legis-

lature in its discretion has the power to classify cities according to population, not only in respect to the powers to be exercised by such cities, but also in respect to the salaries of their officers.

The case of *Ark-Ash Lumber Co.* v. *Pride & Fairley*, 162 Ark. 235, can have no application under the facts of this case. In that case the act by its terms applied to existing highways, and it was manifest that Mississippi County alone was the only county which could ever come within the provisions of the act. Therefore, the act was held to be a special one and unconstitutional, because the notice required by the Constitution for special acts could not in the nature of things have been given.

Again it is claimed that the act is a special one because the amendatory act applies to cities which have a population of 25,000 or more, according to the latest census taken by the authority of the United States. This would be true, if the terms of the act had only applied to cities having that population at the time of the passage of the act. This would show clearly that the act was intended to be a special one, although in form a general law. Such was the case in *Ark-Ash Lumber Co.* v. *Pride & Fairley,* 162 Ark. 235. For the reason that the terms of the act made it only apply to existing highways, we held that the restriction as to population must be deemed to relate to the last Federal census, at the time of the passage of the act.

As we have already seen, the present act is prospective in its operation, and any city at any time in the future which will have a population of 25,000 or more according to the census of the United States may come under its provisions. That is to say, whenever a city at any time is shown by the census of the United States to have a population of 25,000 or more, then such city comes within the terms of the act, and its officers may receive the salary provided for therein. The officers which are provided for in the increase in salaries are the mayor and the commissioners.

This brings us to a consideration of the increase in salary for the other officers. Our Constitution provides that no municipal corporation shall be authorized to pass any laws contrary to the general laws of the State. Article 12, § 4, of the Constitution of 1874. In construing this section this court has uniformly held that ordinances contrary to the general laws of the State are void. *Morrilton v. Comes,* 75 Ark. 458, and *Tomlinson Brothers* v. *Hodges,* 110 Ark. 528.

It will be noted that § 12 of the original act passed by the Legislature in 1913 provides for the payment of certain stipulated amounts to the mayor and commissioners, and provides that no salaries of any such officers shall ever be increased or diminished during the time for which they are elected, or after the primary election for their nominations are held. The amendatory act passed by the Legislature at its special session in October, 1923, provides that the mayor and commissioners shall receive a certain stipulated salary until otherwise provided by law. This was repugnant to the original act, and under the ordinary rules of statutory construction repealed it. The amendatory act also provided that every other officer or assistant shall receive such salary or compensation as shall by ordinance be provided, payable in monthly installments, or at such periods as the board shall determine. Thus it will be seen that, as to the other officers or assistants, the amendatory act in express terms provides that they shall receive such salaries as shall be provided by ordinance.

It is claimed, however, that the increase of salary was given these officers by resolution, instead of ordinance. This did not make any difference. The board of commissioners under the act are given the power to exercise all respective functions usually exercised by city councils.

According to the allegations of the complaint, the increase in salary was given to these officers by a resolution passed by the board of commissioners, and this was

·· in legal effect an ordinance enacted by them. It does not matter whether the city atorney, city treasurer, and other named persons shall be designated as officers or employees. The statute refers to them as officers· or assistants and the board of commissioners is given full power to appoint them and to provide for their compensation. The ordinance or resolution under which they were originally appointed and the subsequent one authorizing them to receive such salary as shall be authorized by ordinance expressly conferred upon the board of commissioners, the power to fix their salary and such act could not in any sense be said to conflict with any other act of the General Assembly.

It is obvious that the general acts of the Legislature under which cities and towns generally are governed do not apply to cities which have adopted the commission form of government. The reason is that special statutes provide for the government of cities adopting that form of government, and they are necessarily exclusive in the matter.

·· It follows that the decree of the chancellor must be affirmed.