## BRADFORD et al. v. CITY OF HOUSTON.
### (No. 1662.)

Court of Civil Appeals of Texas. Beaumont.
March 14, 1928.

Rehearing Denied March 28, 1928.

1. **Constitutional law** ⊜⟶208(1)—**Municipal Corporations** ⊜⟶626—**Legislature and lawmaking bodies of municipalities may make reasonable classification of persons or things for various purposes of legislation.**

Legislature and lawmaking bodies of incorporated cities and towns, acting within their grant of power, may make reasonable classification of persons or things for various purposes of legislation; the only limitation on such power being that it must not be arbitrary, unreasonable, and unjust.

2. **Constitutional law** ⊜⟶287—**Licenses** ⊜⟶7 (3)—**Ordinance regulating and prescribing license for stationary steam engineers and excluding mobile steam engineers held not arbitrary and unjust classification, nor violative of due process clause (Const. U. S. Amend. 14).**

Ordinance prescribing qualifications and fixing license fees of stationary steam engineers and excluding mobile steam engineers *held* not an arbitrary, unreasonable and unjust· classification nor violative of the due process of law provision of the Fourteenth Amendment to the Federal Constitution, in view of greater and different kind of skill required ·to operate mobile engine and boiler than stationary engine and boiler, and the greater perils to the public in operation of stationary ·engine and boilers.

Appeal from District Court, Harris County; Chas. E. Ashe, Judge.

Suit for injunction by J. R. Bradford and others against the City of Houston. From a

---

⊜⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

judgment denying injunctive relief, plaintiffs appeal. Affirmed.

Stephen L. Pinckney and Richard T. Fleming, both of Houston, for appellants.

Sewall Myer and T. J. Harris, both of Houston, for appellee.

WALKER, J. The city of Houston has a duly enacted ordinance creating the office of boiler and elevator inspector and a board of examiners to examine and license stationary steam engineers and prescribing the qualifications and fixing the license fees of stationary engineers. Without giving the ordinance in full, it is sufficient to say, for the purposes of this opinion, that its provisions relate only to stationary engineers. This suit was brought by appellants, stationary engineers of the city of Houston, to enjoin the enforcement of this ordinance, invoking the legal proposition that a classification of steam engineers, including only stationary engineers and excluding mobile steam engineers, is "arbitrary, unreasonable, and unjust," and therefore violative of the due process of law provisions of the state and Federal Constitutions. The trial court denied the injunctive relief, holding the ordinance constitutional, and the case is before us for review against that judgment. Since appellee concedes that the allegations of appellants' petition are sufficient to invoke the equity jurisdiction of the district court, it is not necessary to review the petition nor to discuss appellants' propositions on that issue. This leaves in the case only the proposition that the ordinance is violative of due process of law and denies appellants the equal protection of the law, in that the classification of stationary engineers, excluding mobile engineers and imposing burdens and restrictions upon stationary engineers not required of mobile engineers, is in violation of the Fourteenth Amendment to the Federal Constitution. As a statement of the case, we give the following concessions from appellants' brief:

(a) "As officers of the court, attorneys for appellants have attempted in their brief to be as frank and candid as possible, and in so doing, admit that an ordinance regulating steam boilers is essential to public safety, and that the license fees charged under the existing ordinance are not unreasonable, and that in exempting locomotive engineers and boilers carrying not over 10 pounds' pressure and used for heating houses, this is a reasonable exception."

(b) "At this point, also, it is submitted that plaintiff raises no question relative to the exemption of locomotive boilers, and parties agreed below that they were inspected and passed on by several inspectors, which we candidly admit differentiates them as to subject-matter by a reasonable use of the power of classification."

(c) "We submit, as previously stated herein, that the city is attempting to achieve the wholly laudable purpose in the exercise of its police

4 S.W.(2d)—38

power, in passing and seeking to enforce this ordinance, but that in so doing the city has transgressed the rules of classification which must be observed in the use of its police power, and that there is no rational basis, such as is required by law, in discriminating between the stationary engineer and the mobile engineer and requiring an examination of the stationary engineer and not making the same requirement for engineers on mobile boilers, and that to permit such a classification to stand is to permit an unreasonable, capricious, and arbitrary classification to exist that does not achieve the purposes of the ordinance."

(d) The following excerpt from the testimony of D. F. Beeman, an expert, which appellants accept as true:

"Q. Mr. Beeman, in connection with the installation of steam boilers and your knowledge and experience, suppose that you had a boiler of a certain type, of the same character of construction or the same capacity, equipped with the same safety devices, figured out mathematically to the same factors of safety, and that you had two boilers embodying all those elements, and suppose one of those boilers was placed out on a lot in a fixed stationary position, uninclosed, and you had another boiler of identical type and of identical features with respect to the stationary boiler, the second boiler having the added attribute or quality of being capable of moving under its own power, bearing in mind that each is identically the same in construction and safety devices, and that the only difference is in the mobility of the one and the immobility of the other, in your opinion, is there any difference with respect to the safety of the two boilers? A. I should say that they both would be equally as safe to operate, depending upon the knowledge and experience of the operator. So far as the boiler itself was concerned, each would be equally as safe or equally as dangerous, subject to the qualifications of the operator. Assuming that you have these two steam boilers, differing only with reference to their mobility, I would say that the only question entering into the factor of safety of the operation would be the skill of the operator. I imagine that a mobile boiler should be better cared for and watched closer than a stationary boiler."

(e) "It is submitted that the undisputed facts in this case reflect that there is no rational distinction between a stationary steam boiler and a mobile steam boiler, and the purposes sought to be attained, to wit, the public safety. The evidence shows that as between a stationary boiler and a mobile boiler, each being identical and differing only in mobility or immobility, they are equally as safe or equally as dangerous, and that the primary factor of any distinction as to safety is in the skill of the operator, and further, that the mobile boiler must be cared for and watched closer than a stationary boiler. Is it not reasonable to conclude that in the operation of a mobile boiler the operator thereof has greater duties to perform? Not only must he be engaged in the mechanics of the operations of the boiler, but being on a moving object, his attention must be directed to its progress, thereby diminishing the attention which should be paid to the mere operation of the boiler itself, hence in the face of this

rather obvious fact, the ordinance complained of provides for no examination of the operator of mobile boilers and no inspection of the same, but the stationary boiler, requiring a lesser degree of skill and knowledge to operate, is subjected to inspection and its operator must be examined. Frankly, it is beyond our comprehension to detect the rationality of such procedure."

(f) To this we add the following conclusion of fact taken from appellee's brief, and not contested by appellants:

"The physical conditions under which a stationary boiler and a mobile boiler are operated are entirely different, as is, of course, self-evident. The mobile boiler is one moving from place to place, out in the open, and is few in number and of smaller capacity.

"Stationary boilers, in most instances, are located in buildings such as schoolhouses, churches, hospitals, office buildings, and other places where numerous persons collect. These boilers are usually inclosed in basements and in more or less inaccessible places. Such stationary boilers are usually of much larger size than mobile boilers. Certainly these stationary boilers are much more numerous, and being in buildings the damages likely to result from explosions are much greater."

By their briefs appellants recognize three classifications of steam engineers, (a) locomotive, (b) mobile, (c) stationary, and concede that there is such a difference between locomotive engineers on the one part and mobile engineers on the other part as to warrant a separate classification for locomotive engineers. Also, they concede that "an ordinance regulating steam boilers is essential to public safety," and "the license fees charged under the existing ordinance are not unreasonable," and "in exempting locomotive engineers and boilers carrying not over 10 pounds' pressure and used for heating houses is a reasonable exemption." On the foregoing statement, it requires more skill and of a different kind to operate a mobile engine and boiler than a stationary engine and boiler. The perils to the public and to the operator of a mobile engine and boiler, created by their operation, are different from those created by the operation of a stationary engine and boiler. Mobile engines and boilers are operated on the streets, moving from place to place, and are few in number, while stationary engines and boilers, for the most part, are operated in buildings, such as schoolhouses, hotels, office buildings, and other places where many persons collect, being placed for the most part in basements and in more or less inaccessible places where the risks of an explosion would be immensely greater than from mobile engines and boil-

ers. Stationary boilers are used much more than mobile boilers. On the facts stated, we have before us the simple question: Did the exclusion of mobile engineers render the classification of stationary steam engineers arbitrary, unreasonable, and unjust, and therefore violative of the Fourteenth Amendment to the Federal Constitution?

[1, 2] Class legislation, as such, is not prohibited by any provision of the state or Federal Constitution. The Legislature and the lawmaking bodies of incorporated cities and towns, acting within their grant of power, may make reasonable classifications of persons or things for the various purposes of legislation. The only limitation on that power is that it must not be "arbitrary, unreasonable, and unjust." 12 C. J. 1128, § 855. In said section 855, the following affirmative statement of the rule is announced:

"If there is a reasonable ground for the classification and the law operates equally on all within the same class, it is valid."

Here no point is made that the ordinance does not operate equally on all stationary engineers. It is also said by said section 855, C. J., that the classification will be sustained provided it could have seemed reasonable to the legislative body, even though it seems to the courts unreasonable; and that all reasonable doubts as to the classification are to be resolved in favor of its validity. On these principles of law the classification of stationary engineers, excluding mobile engineers, rests upon differences so fundamental that the ordinance must be sustained as constitutional. This classification and the principles upon which we sustain it have full support in the following authorities taken from appellants' brief, and nothing we could say would add to their force or application: Southwestern T. & T. Co. v. City of Dallas (Tex. Civ. App.) 174 S. W. 936; Booth v. City of Dallas (Tex. Civ. App.) 179 S. W. 301; Lossing v. Hughes (Tex. Civ. App.) 244 S. W. 556; Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 22 S. Ct. 431, 46 L. Ed. 679. The following authorities are interestingly in point on a constitutional definition of "classification": People v. Gordon, 274 Ill. 462, 113 N. E. 864; Hubbell v. Higgins, 148 Iowa, 36, 126 N. W. 914, Ann. Cas. 1912B, 1007; Johnson v. Gunn, 148 Cal. 745, 84 P. 665. Petit v. Minnesota, 177 U. S. 164, 20 S. Ct. 666, 44 L. Ed. 716, defines the court's power to take judicial notice of physical facts in connection with certain matters in cases of classifications.

The judgment of the trial court is affirmed.