## WATSON et al. v. SABINE ROYALTY CORPORATION et al.

No. 5495.

Court of Civil Appeals of Texas. Texarkana.

July 27, 1938.

Rehearing Denied Sept. 29, 1938.

Smith & West and Brachfield & Wolfe, all of Henderson, for appellants.

Tilley & Tocker and Hamilton Rogers, all of Fort Worth, for appellees.

WILLIAMS, Justice.

This litigation involves the constitutionality of H.B. No. 1096 enacted at the Regular Session, 45th Legislature, 1937, c. 231, designated as Article 2744e in Vernon's Annotated Civil Statutes of Texas. This statute is hereinafter referred to as the "Act." Appellees Sabine Royalty Corporation, T. A. Johnston, and C. O. Christian, plaintiffs below, taxpaying property owners in Rusk County, filed suit in the district court against Rusk County, its Commissioners' Court, the County-wide Equalization School District, the County Board of School Trustees, the respective members of each, both in their individual and official capacities, the County Tax Assessor-Collector, County School Superintendent, Treasurer, and County Depository. The respective parties will be referred to as plaintiffs and defendants, their trial court

designation. Other property owners (not necessary to mention) sought to intervene. No question is raised as to proper parties, plaintiffs, or defendants.

Plaintiffs upon various grounds later herein discussed sought to have the act declared unconstitutional and void. They prayed for permanent injunction to restrain the defendants and each of them named from doing any act prescribed by virtue of the provisions of said act, and for other relief not necessary here to mention. The trial court held that H. B. No. 1096 applied to Rusk County only and could never apply to any other county because of the failure of the statute to provide any standard, rule or regulation by which it may be determined in the future when any other county may have an assessed valuation of $75,000,000 or more, holding, therefore, that it was a local or special law and could have not been legally enacted without a properly published notice of intention to apply to the Legislature for its passage being first given; that such notice was not so given and therefore this bill was unconstitutional and void and in contravention of Sections 56 and 57 of Article 3, and Section 3 of Article 7 of the Constitution of Texas, Vernon's Ann.St.Const. art. 3, §§ 56, 57; art. 7, § 3. The court sustained none of the other grounds of plaintiffs attacking the validity of the law.

Section 57, Article 3, provides that no local or special law shall be passed, unless notice of the intention to apply therefor shall have been published in the locality where the matter or thing to be affected may be situated. The clauses in Section 56 of Article 3 pertinent read:

"The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law, authorizing: * * *

"Regulating the affairs of counties, cities, towns, wards or school districts; * * *

"Creating offices, or prescribing the powers and duties of officers, in counties, cities, towns, election or school districts; * * *

"Regulating the management of public schools, the building or repairing of school houses, and the raising of money for such purposes; * * *

"And in all other cases where a general law can be made applicable, no local or special law shall be enacted; * * *"

A summary of the pertinent provisions of the Act is deemed necessary to the understanding of the nature and scope of the controversy presented in this appeal.

"Section 1. All counties in this State having a population of not more than thirty-two thousand, five hundred (32,500) nor less than twenty thousand (20,000), according to the last preceding Federal Census, and containing a valuation of Seventy-five Million Dollars ($75,000,000) or more, are hereby created into county-wide equalization school districts, and each such county shall have the county unit system of education to the extent specified in this Act and may exercise the taxing power conferred on school districts by Article 7, Section 3, of the Constitution to the extent hereinafter provided but such taxing power shall not be exercised until and unless authorized by a majority of the qualified property taxpaying voters residing therein at an election to be held for that purpose as hereinafter provided.

"Sec. 2. The general management, supervision, and control of the public schools and of the educational interests of such counties shall be vested in the County Board of School Trustees, except as otherwise provided by law and said Board shall perform such duties as are or may be required of it by existing law and by the provisions of this Act and shall constitute the Board of Trustees for such county-wide equalization district. Any such county-wide school equalization district may levy and collect annually on all taxable property in the county an equalization tax not to exceed Twenty-five (25) Cents on the One Hundred Dollars ($100) valuation of property situated in said county and the money derived from said tax shall be known as an equalization fund for the support of the public schools of the county, which funds shall be distributed to the school districts of the county as provided herein." Vernon's Ann.Civ.St. art. 2744e, §§ 1, 2.

Prior to the institution of this suit, Rusk County had held an election and had adopted the provisions of this Act. As plaintiffs make no attack upon this election, the provisions of the Act in Section 3, Vernon's Ann.Civ.St. art. 2744e, § 3, which specify the manner of calling, conducting and declaring the results of such an election has been omitted.

"Sec. 4. In counties voting such equalization tax the County Tax Assessor shall assess all the taxable property in the county at the same rate of valuation as it is as-

sessed for the State and county purposes, and the County Tax Collector shall collect said tax at the same time and in the same manner as State and county taxes are collected. The Tax Collector shall have the same authority and the same laws shall apply in the collection of said tax as in the collection of county ad valorem taxes. He shall on or before the 10th of each month make a report to the County Board of School Trustees and to the County Superintendent of Schools showing all moneys collected by him during the last month by said tax. The officers assessing and collecting said equalization tax shall receive therefor the same compensation as is paid for assessing and collecting school taxes in common school districts." Vernon's Ann. Civ.St. art. 2744e, § 4.

The first question presented is to determine the meaning of the word "valuation" as used by the Legislature in this bill. Section 4 of the Act may be considered to ascertain the intent of the Legislature in the use of this term. Said section provides: "In counties voting such equalization tax the County Tax Assessor shall assess all the taxable property in the county at the same rate of valuation as it is assessed for the State and county purposes." It is observed that the County Tax Assessor is mentioned and not the assessor of some other political subdivision. The valuation mentioned in Section 4 is that "for State and county purposes." Section 2 of the Act, Vernon's Ann.Civ.St. art. 2744e, § 2, may also be looked to in ascertaining the intent of the Legislature wherein it provides: "Any such * * * equalization district may levy and collect annually on all taxable property in the county." This term "valuation" used, as here, in a taxation statute naturally would imply an assessment for taxes by some legally constituted authority. Articles 7177 to 7244 of Revised Civil Statutes of 1925 detail the time, form and manner of assessing taxes and preparing the tax rolls. These statutes, art. 7219, further make it mandatory on the County Tax Assessor to prepare such a tax roll each year. When completed, one of three copies is required to be filed in the County Clerk's office of that county. These requirements afford a definite method of ascertaining the amount of the assessed valuation for the respective counties for any particular year. Construing these sections mentioned in the Act and the use of the term in this taxing statute, we conclude that the trial court correctly held that the word "valuation", as used, should be construed to mean "assessed valuation," and because of provisions in Section 4 we further conclude that the Act means assessed valuation according to the tax rolls of a county as assessed for State and County purposes. 39 Tex.Jur. p. 201, Sec. 108; 66 Cor.Jur. pp. 417, 418.

With the conclusions just reached, the next question arises if the provisions of this Act can be construed to include any other county in Texas if and when such county reaches in the future a valuation of $75,000,000 or more. It is to be observed that Sec. 1, Vernon's Ann.Civ.St. art. 2744e, § 1, provides: "All counties in this State having a population of * * * according to the last preceding Federal Census, and containing a valuation of Seventy-five Million Dollars ($75,000,000) or more, are hereby created into county-wide equalization school districts, * * *." The trial court in his conclusions of law, pertinent to the construction placed on the last quoted section, found:

"That the court, although it may be authorized to read into the law that 'valuation' herein means 'assessed valuation,' since the word as used in the law can have no fixed or ascertained meaning without reading that meaning into it, yet, it is concluded that the court may not in law be permitted by its judgment to further amend the law by also further adding to it and reading into it that it means 'assessed valuation according to the last approved assessment rolls of the county' or other additional language that could make the law one by and under which other counties by facts and conditions arising in them hereafter come under its provisions and be entitled to operate thereunder, without which this act can not be operative as a general law, and is therefore invalid and void."

In one of the findings of fact the court stated "that this law makes no provision for determining when at any time hereafter any other county in Texas may be known to have a valuation or an assessed valuation of $75,000,000 or more, since it provides no standard, rule or regulation when and how to determine that fact."

The Act refers to the last preceding Federal Census to determine the requisite as to population and thus affords a definite standard as to population. When the other concurrent requisite, that of valuation, is mentioned the Act does not read "according to the last approved tax

rolls as assessed for State and County purposes." And in this it is indefinite. If the Act be construed to mean that the population and valuation of both are to be determined as of the year of the last preceding Federal Census, then this factor alone would not brand it as a local or special law, but it would eliminate Rusk County under the concurrent requisites under such construction. Rusk County did not contain the requisite valuation in 1930, the date of the last Federal census. If this last construction be placed on this Act, then its enactment becomes an idle gesture for it would not apply to any county.

 Argument is advanced that the Act by the use of the language "all counties * * * containing a valuation of Seventy-five Million Dollars ($75,000,000) or more, are hereby created" then and there creates such counties which at the time the bill was enacted had the $75,000,000 valuation, and which also had the required population according to the preceding census. If this construction is placed upon the Act, then such would constitute it a local or special law. And if such, the Act would be unconstitutional because the requirements of Sec. 57, Art. 3, Constitution, Vernon's Ann.St.Const. art. 3, § 57, were not complied with in its enactment. "It is settled that if an act is fairly capable of two constructions, under one of which it could be constitutional and under the other it would be invalid, the former should prevail." 39 Tex.Jur. pp. 206–208, Sec. 111, and authorities there cited. To say that the Legislature intended that the Act was to apply to such counties which had the population per the preceding Federal Census and the valuation according to the last approved tax roll assessed for State and County purposes would not be an unfair construction of the Act. Under the foregoing presumption that the Legislature acted in the light of the Constitution, with the intention to observe it rather than to violate it, the majority of this court is of the opinion that the term "valuation" as used in the Act may reasonably be construed as referring to the valuation according to the last approved tax rolls of a county assessed for State and county purposes. Spears v. San Antonio, 110 Tex. 618, 223 S.W. 166; Maud v. Terrell, 109 Tex. 97, 200 S.W. 375; Eppstein v. State, 105 Tex. 35, 143 S.W. 144; 29 Tex.Jur. p. 206, Sec. 110; 9 Tex.Jur. p. 475, p. 483, Sec. 63.

It is asserted under various counter propositions that the Act is unconstitutional on the further ground that the two concurrent requisites have no true relevancy to the purpose of the legislation, and, secondly, that the classification on the basis of population and valuation within the brackets respectively as named in the bill is arbitrary; and, third, that other counties situated in the same or other oil fields with the same conditions prevalent therein as in Rusk County are excluded from the Act by the classifications specified. And in these, they contend that the classification concurrent requisite is a device and plan purposely designed to give what is in substance a special law, the form of a general law, and is unreasonable to such degree as to indicate beyond doubt that the purpose of the Legislature was to single out one county and to attempt to legislate upon the subject of its schools, and not upon the subject generally.

Both plaintiffs and defendants in their respective briefs have cited and discussed the expressions of the Legislature contained in the emergency clause in support of their respective contentions as to whether the classification is arbitrary. The emergency clause of the Act reads:

"The importance of this legislation and the fact that in several counties in the State of Texas there exist conditions which render it impractical to continue to operate under the provisions of our Statutes as they now stand; and the further fact that in such counties several of the school districts are being hard-pressed to continue their program of education by reason of the fact that oil development within the county but outside of the limits of the school district have resulted in increased attendance in such district but has not increased the valuation within the district to take care of the added burden; and the further fact that said schools are unable to maintain a sufficient course of training because they lack the necessary revenue for the same while other school districts within the county, because of oil development within their district, have more than enough to continue their educational program * * *." Acts 1937, c. 231, § 9.

A discovery of an oil field in a county will cause a sudden and usually a material increase in the valuation of such a county. Such a discovery will cause a

great influx of population. McLaughlin v. Ford, 168 Ark. 1108, 273 S.W. 707. This increase of population is not confined to the immediate territory where the wells are drilled. A large per cent of such influx will locate in towns, cities, and more distant points of such county and also adjoining or other school districts as well as those where the oil-producing sand is located. Oil-producing sands are not confined to county line or school district boundaries and usually are located only upon a part of the territory in such a county. According to the last Federal Census the ratio of school children to the population in Texas is approximately one to four. There is a reasonable relation between population and the needs of a school district, the larger the population the more scholastics and needs for school purposes.

The question of the relevancy of valuation to the needs of schools in a political subdivision has not directly arisen in any of the decisions of the Texas courts. The Supreme Court in Mumme v. Marrs, 120 Tex. 383, 40 S.W.2d 31, has taken judicial cognizance of the fact that the efficiency of the schools in a given locality is connected with the concurring circumstances of population and taxable wealth. The Supreme Court in Jones v. Alexander, 122 Tex. 328, 59 S. W.2d 1080, which upheld as constitutional the classification as to population prescribed in the County Juvenile Board Act, said [page 1083]: "In fixing the amount of such salaries, the Legislature may take into consideration the population and size of the county, its taxable values, and the general conditions existing therein." The classification requisite as to valuation in connection with schools has been held as not being unreasonable in Gruber v. State, 196 Ind. 436, 148 N.E. 481 (valuation alone); State v. Cloudy & Travers, 159 Minn. 200, 198 N.W. 457 (valuation and area); State v. Delaware Iron Co., 160 Minn. 382, 200 N.W. 475 (scholastics and assessed valuation). That the classification may consist of more than one requisite is recognized in O'Brien v. Amerman, 112 Tex. 254, 247 S.W. 270, wherein a statute was upheld as constitutional which contained the three requisites in a classification, that is, a city of 100,000 population or over, situated upon a navigable stream, and such city owning or operating municipal docks. We conclude from a review of above authorities that a classification of a concurrent requisite of valuation and population is not an unreasonable classification as applied to the needs of a school district.

Next is presented the question if placing the population requisite within the bracket of not less than 20,000 nor more than 32,500 and the valuation at $75,-000,000 or more when such concurrent requisites excludes other counties in Texas in similar condition is an arbitrary classification by the Legislature.

The trial court found that there were and now are other counties in the State coming within the provisions of said Act as to population, but not as to assessed valuation; and there were other counties in the State coming within the valuation provision, but not the population provision, all of which counties, or at least some of them, being similarly situated as Rusk County as to having school districts therein with some having large taxable values and others of small taxable values, such as to make a great inequality between some districts in the same county in their financial ability to provide for their school needs.

There was testimony introduced to the effect, at least to a substantial degree, that the same conditions expressed in the emergency clause as necessitating the passage of the Act as existed in Rusk County also existed in the adjoining counties of Gregg and Upshur. The same condition existed in Van Zandt County. And to some extent the same condition existed in Smith County. An oil field exists in each of the counties named. In fact, Rusk, Gregg, Upshur and Smith Counties are in the same oil field. If the Legislature had lowered the valuation bracket or enlarged the population span, these other counties named could have been included within the provisions of the Act. An oil field which had brought a large influx of population and scholastics to Henderson and other school districts in Rusk County adjacent to the oil field, for the same cause produced a like influx of population to the larger towns and adjacent school districts to the oil fields in Gregg, Upshur, Van Zandt, and Smith Counties. It is undisputed that at the time this bill was enacted there were forty-two counties in this State which had a population of not less than 20,000 nor more than 32,500, according to the pre-

ceding Federal Census. There are eight counties which had a valuation of $75,-000,000 or more. Of all these fifty counties only Rusk County had both and would come within the classification prescribed. The bill was introduced in the House of Representatives by a Rusk County Legislator. The population bracket as first introduced would have included Gregg County within its provisions. The bill was amended in the Senate by changing the population bracket from not less than 15,700 so as to read not less than 20,-000. A further detailed history of this bill in the Legislature before its enactment together with the terms of the Act in question strongly suggests that it was enacted in view of prevailing conditions, but there is a possibility that it will apply to other counties in the future.

■ How broad the basis of classification may be prescribed is within the province of the Legislature. As stated in Clark v. Finley, 93 Tex. 171, 54 S.W. 343, 346:

"It may be, as urged in the argument, that there are counties in the class to which the law is made applicable, the population of which very slightly exceeds that of other counties which are without it, and that it seems unreasonable to make a discrimination upon so slight a difference. To this the answer is, the line must be drawn somewhere, and that a similar difficulty would probably result if the classification were made upon any other basis. Exact equality in such matters, however desirable, is practically unattainable."

This rule was reaffirmed in the recent decision of the Supreme Court in Hurt v. Cooper, 110 S.W.2d 896, wherein they upheld the classification made by the Legislature in reference to chain stores. See, also, Chicago, B. & Q. R. Co. v. McGuire, 219 U.S. 549, 31 S.Ct. 259, 55 L.Ed. 328; McLaughlin v. Ford, supra; State v. Cloudy & Travers, supra.

We quote from the opinion in the case of Gerard v. Smith, 52 S.W.2d 347, by the El Paso Court of Civil Appeals, which was approved by the Supreme Court through refusal of a writ of error [page 350]:

"The classification of subjects is a legislative function, St. Louis Southwestern R. Co. v. State, 113 Tex. 570, 261 S.W. 996, 33 A.L.R. 367, and a statute will not be held invalid by reason of the classification made, unless it appears that the basis therefor is purely arbitrary, Interstate Forwarding Co. v. Vineyard, (Tex.Civ.App.) 3 S.W. 2d 947, and it will be presumed that the classification adopted is a just and reasonable one, Supreme Lodge United Benev. Ass'n v. Johnson, 98 Tex. 1, 81 S.W. 18. If the classification could have seemed reasonable to the Legislature, then our duty is to sustain it, regardless of our own opinions on the matter. Clark v. Finley, 93 Tex. 171, 54 S.W. 343; Bradford v. City of Houston (Tex.Civ.App.) 4 S.W. 2d 592."

Upon the support of the foregoing authorities together with City of Fort Worth v. Bobbitt, 121 Tex. 14, 36 S.W.2d 470, 41 S.W.2d 228, and O'Brien v. Amerman, supra, the majority of this court holds the classification as made was not arbitrary.

■ The Act is further attacked on the ground that the same is violative of Sec. 3, Art. 7, of the Constitution, Vernon's Ann.St.Const. art. 7, § 3. This section deals with the power of the Legislature to provide for the formation of school districts by general laws. We pretermit a further discussion, the majority of this court having concluded the Act to be a general law.

We next consider if the provisions of the Constitution of Texas and Articles 2676, 2678a, 2681, 2690, 2692, 2741, 2758, 2762, 2766, and 2780, Revised Civil Statutes of Texas (1925), Vernon's Ann.Civ.St. arts. 2676, 2678a, 2681, 2690, 2692, 2741, 2758, 2762, 2766, 2780, contemplates only the creation of common, independent (and by reason of a constitutional amendment, Parks v. West, 102 Tex. 11, 111 S.W. 726), county-line school districts. And in this connection, it is further urged that this Act superimposes upon the school districts of Rusk County, which cover all the area in that county, another district, and is a duplication of the functions already being exercised by said school districts.

This brings us to a consideration of the further provisions of Section 3, Article 7, supra, Vernon's Ann.St.Const. art. 7, § 3, reading:

"* * * And the Legislature shall be authorized to pass laws for the assessment and collection of taxes in all said districts and for the management and control of the public school or schools of such districts. * * * And the Legislature may authorize an additional ad valorem tax to be levied and collected within all school districts heretofore formed or hereafter form-

944

ed, for the further maintenance of public free schools * * *."

The statutes above mentioned deal with the management and control of school districts and alteration of boundary lines of such districts. We deem it unnecessary to copy these statutes. We deem it advisable to set out fully the other provisions of the Act not already detailed.

"Sec. 3. * * * The Commissioners Court shall at its next regular meeting canvass the returns of said election, and if a majority of the votes cast shall favor such tax, the Court shall declare the result and certify the same to the County Board of School Trustees and to the County Tax Assessor and Collector, and said Board of County School Trustees shall thereupon be authorized to levy said tax and the County Tax Assessor and Collector shall be authorized to assess and collect same. No election to revoke said tax shall be ordered until the expiration of five (5) years from the date of the election at which said tax was adopted. * * *

"Sec. 5. The County Superintendent shall be the Treasurer of the county-wide equalization district and shall keep an accurate record of all moneys received and paid out by such county-wide equalization district. The county depository shall be the depository for the county-wide equalization district and such depository shall enter into a bond of a like condition and amount as is prescribed by law for depositories of county funds. The Tax Collector shall on or before the 10th of each month deposit all moneys collected by him during the preceding month by said school equalization tax in the depository to the credit of the county-wide school equalization fund.

"Sec. 6. The County Board of School Trustees shall distribute the money collected from any taxes levied by said district to the common and independent school districts of the county on the same basis that the State per capita apportionment is distributed among said common and independent school districts. The County Board of School Trustees shall issue warrants to be signed by the president of said Board, attested by the secretary thereof, against such equalization fund to the School District Trustees on a per capita basis as is provided herein, provided, however, that the County Board shall from time to time as the money is collected issue warrants to the various school districts in proportion to the amount that each is entitled to receive on such per capita basis as provided herein.

"Sec. 7. This Act shall not have the effect of changing any duties imposed on or powers conferred on the Trustees of any common or independent school district, situated in the counties covered by this Act unless and except as expressly provided herein. It being the intention of this law that respective Boards of Trustees shall continue to administer their lawful duties and powers as now authorized by law, but the equalization tax authorized shall be levied by the County Board of School Trustees and assessed and collected by the County Tax Assessor and Collector, and distributed to the respective districts by the County Board of School Trustees." Vernon's Ann.Civ.St. art. 2744e, §§ 3, 5–7.

This Act as a whole indicates its sole and only purpose is to create a single tax district; that is, to set up machinery by which a county could adopt its provisions. The Act leaves the boundary lines of the respective school districts and the management of the schools as provided in the general law intact, subject only to such modification as is reasonably necessary to effect the levy and collection of a supplemental tax on the taxable property in all the school districts and a distribution of the total so realized into the respective school districts on a per capita scholastic basis. It is further evident that the Act has as its purpose to equalize the educational opportunities of school children.

The constitutionality of a county-wide equalization school tax was upheld by the Supreme Court of North Carolina in Coble v. Board of Commissioners of Guilford County, 184 N.C. 342, 114 S.E. 487. That Act is in many particulars similar to the one here under consideration. There, as here, the respective school districts had theretofore voted and levied a school tax of varying rates in the respective school districts; there, as here, the Act did not change the lines of any old districts, and there, as here, the Act superimposed another district over the districts already established for the sole purpose of levying and collecting an additional tax.

In Mumme v. Marrs, 120 Tex. 383, 40 S.W.2d 31, it was contended that the Rural Aid Act was void in that the Constitution had set up a complete plan for the operation of the public school system and that all other methods of raising and appropriat-

ing funds were impliedly prohibited by the Constitution. In discussing that question, which is pertinent to the disposition of the same contention urged here, Chief Justice Cureton said [page 33]:

"The history of educational legislation in this state shows that the provisions of article 7, the educational article of the Constitution, have never been regarded as limitations by implication on the general power of the Legislature to pass laws upon the subject of education. * * *

"That the enumeration in the Constitution of what the Legislature may or shall do in providing a system of education is not to be regarded as a limitation on the power of the Legislature to pass laws on the subject is shown by the decision of the Court of Appeals in Ex parte Cooper, 3 Tex.App. page 489, 30 Am.Rep. 152, * * *."

We conclude from the provisions of Sec. 3, Art. 7, above set out, and the liberal interpretation placed on these provisions by the court in Mumme v. Marrs, supra, that this Act is not violative of said constitutional provisions.

In Sec. 3 of the Act, Vernon's Ann.Civ. St. art. 2744e, § 3, there is a clause reading: "No election to revoke said tax shall be ordered until the expiration of five (5) years from the date of the election at which said tax was adopted." The validity of this provision is not involved in the present appeal. We therefore pretermit a discussion of same.

All other propositions have been examined and are respectfully overruled.

The majority of this court is of the opinion that this Act is constitutional, and therefore the judgment of the lower court is reversed and here now rendered sustaining the validity of said Act.

WILLIAMS, Justice (dissenting).

I do not take issue with the proposition that the classification of subjects is a legislative function and that it will be presumed that the classification adopted by the Legislature is a just and reasonable one. But the law does not stop here. As discussed in Bexar County v. Tynan, 128 Tex. 223, 97 S.W.2d 467, classification cannot be adopted arbitrarily upon a ground which has no foundation in difference of situation or circumstances of the municipalities placed in the different classes. There must be some reasonable relation between the situation of municipalities classified and the purposes and objects to be attained.

"There must be something * * * * which in some reasonable degree accounts for the division into classes.

"It is well recognized that in determining whether a law is public, general, special or local, the courts will look to its substance and practical operation rather than to its title, form and phraseology, because otherwise prohibitions of the fundamental law against special legislation would be nugatory." 25 R.C.L. 815, and authorities there collated.

In this Act the Legislature has used the concurrent requisites of valuation and population within the designated brackets for the difference or division into classes. This record discloses that the counties of Bexar, Dallas, Harris, Jefferson, Tarrant, and El Paso each come within the valuation bracket of the Act, having more than $75,000,000 valuation. Each of these counties have several times the population requisite of the Act. The greater the population we naturally find more scholastics and more needs of the schools. Yet, under this Act these counties having the valuation and several times the scholastics or population are excluded by the classification used. It would not be unreasonable to observe that the increase of population of a county, city or town usually causes an increase to some degree in the valuation of the property and in its development. This statement is true as to the counties just named—a large valuation, a large population.

In the emergency clause the Legislature recites the reasons for the classification made and the passage of the Act. They state that in several counties of Texas there exist conditions which render it impracticable to continue to operate schools under the statutes as they now stand; that in such counties several of the school districts are being hard pressed to continue their program of education by reason of oil development, etc. The trial court found that the Act, because of the concurrent classifications, applied only to Rusk County; that the schools of other counties in Texas were similarly situated. This finding is supported by the facts detailed in the above opinion.

Notwithstanding the reasons assigned in the emergency clause, the Legislature by the use of the concurrent requisites in the brackets as contained in the Act has excluded every other county similarly situat-

ed in the same oil field as well as other counties possessing oil fields situated in other parts of Texas. And with the foregoing thoughts in mind, I am unable to discover any logic in the concurrent classification within the brackets here prescribed in relation to needs of a school district, with only a remote probability or possibility for the Act to apply to any other county in the future.

In the majority opinion, to sustain the validity of this Act as being a general law it became necessary to construe the term "valuation" to mean "assessed valuation for State and County purposes." It further became necessary to construe the clause "and containing a valuation of $75,-000,000 or more" to mean such a valuation "according to the last approved tax rolls of a county assessed for State and County purposes." Other statutes of Texas, in particular Articles 2740f, 3902, 3943, Vernon's Ann.Civ.St., where the Legislature used the term "valuation", that body had further defined that term by adding "assessed valuation according to the last preceding approved tax roll." It is logical to conclude that the failure to include this clause in the present Act evidences an intention that it was not meant to be the case in this Act. This conclusion is further supported, to some extent, in the fact that this Act provides that such counties having the two requisites "are hereby created" into an equalization tax district. The Act does not provide that such counties "may" in the future form such district. In my judgment, if the Legislature intended the valuation to be determined by the last approved tax rolls of a county assessed for State and County purposes, that body should have so incorporated this term into this Act, and it is not within the province of the courts to so read this clause into same. To construe the Act as it is written it can be classed only as a special law creating a school district to apply only to Rusk County.

Prior to 1927, Section 3, Article 7, gave the Legislature the authority to provide for the formation of school districts by general or special law without the local notice required in other cases of special legislation. As amended, Vernon's Ann.St. Const. art. 7, § 3, this articles now reads: "And the Legislature may also provide for the formation of school districts by general laws." This provision is clear and positive. Fritter v. West, Tex.Civ.App., 65 S.W.2d 414, writ refused.

It is evident from the discussion contained in these opinions that the Act is indefinite and uncertain. Such being the situation, a court may consult available sources of information such as the emergency clause, legislative history, legislative journals and records. 39 Tex.Jur. pp. 225, 230, 231, 241; 59 Cor.Jur. 958.

Taking into consideration the legislative history of this bill, its practical operation, the exclusion of counties similarly situated, the use of the term in Section 1 (Vernon's Ann.Civ.St. art. 2744e, § 1) "are hereby created," the absence of the term "according to the last approved tax rolls assessed for State and County purposes," or other additional language of similar import, and the classification calling for the concurrent requisites within the particular prescribed brackets are such as to indicate that the purpose of the Legislature was to single out Rusk County and to attempt to legislate with reference to the schools of that county and not upon the subject generally. For these reasons it is my judgment that the Act is void as being in violation of Sections 56 and 57 of Article 3, and Section 3, Article 7, of the Constitution of Texas. Bexar County v. Tynan, 128 Tex. 223, 97 S.W.2d 467; Smith v. State, 120 Tex.Cr.R. 431, 49 S.W.2d 739; Lewis Sutherland, Statutory Construction (2 Ed.) p. 397; City of Fort Worth v. Bobbitt, 121 Tex. 14, 36 S.W.2d 470, 41 S.W. 2d 228; Harbert v. Mabry, 166 Tenn. 290, 61 S.W.2d 652; Leonard v. Road Maintenance Dist. No. 1, 187 Ark. 599, 61 S.W.2d 70; Clark v. Finley, supra; Gruber v. State, supra; 59 Cor.Jur. p. 736; Board of Education of Ogden City v. Hunter, 48 Utah 373, 159 P. 1019; Colley v. Jasper County, 337 Mo. 503, 85 S.W.2d 57.