ARK-ASH LUMBER COMPANY *v.* PRIDE & FAIRLEY.

Opinion delivered January 21, 1924.

1. HIGHWAYS—CONSTRUCTION OF ACT.—In act No. 18, Ex. Sess. 1923, entitled "An act to enable certain road improvement districts to receive Federal aid," etc., and providing that it should apply only to counties having between 45,000 and 54,000 inhabitants, the restriction as to population must be deemed to relate to the last Federal census.

2. CONSTITUTIONAL LAW—CONSTRUCTION OF STATUTES.—Where the language of a statute is ambiguous and open to two constructions,

one of which will render it valid and the other invalid, the court will adopt the former construction.

3. EVIDENCE—GOVERNOR'S PROCLAMATION—JUDICIAL NOTICE.—Judicial notice is taken of the Governor's proclamation calling an extraordinary session of the General Assembly.

4. STATUTES—SPECIAL ACT—NOTICE.—Where less than 30 days intervened between the Governor's proclamation for an extraordinary session of the Legislature and the introduction of a local bill, noncompliance with Const. 1874, art. 5, § 26, requiring 30 days notice of such a bill, affirmatively appears.

5. STATUTES—GENERAL AND SPECIAL ACTS.—The inquiry as to whether a statute is general or special is not restricted to its form, but reaches to its necessary effect, regardless of its form.

6. STATUTES—LOCAL ACT.—Acts Ex. Sess. 1923, No. 18, to enable road districts in counties between 45,000 and 54,000 population to receive Federal aid, *held* a local act, as it applied only to Mississippi County.

Appeal from Mississippi Chancery Court, Osceola District; *J. M. Futrell,* Chancellor; reversed.

*E. E. Alexander,* for appellants.

1.   The bill applies to counties having a population of between 45,000 and 54,000, and to no others, a limitation which makes of it a special or local bill, and it is therefore unconstitutional and void. It is a special or local bill also for the further reason that it applies only to road districts in the particular counties having the requisite population to which Federal aid has heretofore been allotted, but which cannot receive such aid without additional legislation.

2.   The act provides no means of determining the population. We think the Federal census is competent for that purpose, but certainly the school census taken annually for the purpose of ascertaining the school population is not competent evidence in an inquiry of this nature.

*J. T. Coston,* for appellees.

1.   As to ascertainment of the population the act, we think, places that duty on the State Highway Engineer or the Board of Commissioners. See § 2 of the act. If an official is authorized to do a certain thing only in a certain contingency, it will be presumed, if he does that

thing, that the contingency happened or existed. 132 S. W. 224; 199 S. W. 120; 201 S. W. 514. It was not the intention of the Legislature to leave the question of population open for all time, so that any property owner could bring suit at any time in the future to cancel the bonds and thrust upon the bondholders the burden of showing that the population was between 45,000 and 54,000. Such a construction could not be given the act. 92 U. S. 488-489. The evidence on the question of population in this case was made as nearly conclusive as it could be made without taking an actual census, and it was not essential to take a census. 40 Ark. 296. As to competency of the evidence introduced, see 65 Ark. 284.

2. The act involved here is not a special or local bill. It is general in its application to all counties that come within its provisions. 86 S. W. 845, 846.

McCULLOCH, C. J. The questions involved in this case relate to the validity of a statute enacted by the General Assembly at the extraordinary session which convened on September 24, 1923 (Acts Special Session 1923, p. 126), the caption of which clearly states the purpose and scope of the statute, and reads as follows: "An act to enable certain road improvement districts to receive Federal aid, make additional assessments of benefits, issue and sell additional bonds, construct, improve and maintain the public roads and bridges in said districts, and applying only to counties having a population of between 45,000 and 54,000, and for other purposes."

Section 12 of the statute reads as follows:

"Section 12. Be it further enacted: That this act shall be construed as supplemental to and in aid of existing laws, and not as a repeal thereof, except in so far as the same conflict with this act; and, in case any section or clause of this act is held to be unconstitutional, it shall not invalidate any other part of the act. Provided, however, that this act shall apply only to counties having between 45,000 and 54,000 inhabitants."

The Osceola & Little River Road Improvement District No. 1, which was organized in Mississippi County under general statutes (Crawford & Moses' Digest, § 5399 *et seq.*), is seeking to proceed under the provisions of the statute above referred to, and the owners of certain real property in the district attempt in this action to prevent such proceeding, on the ground that the statute is unconstitutional.

It appears that the population of Mississippi County, according to the Federal census taken and promulgated during the year 1920, was 47,320, and, according to that census, the population of no other county in the State was between 45,000 and 54,000. In the trial of this case below, each party to the controversy introduced testimony tending to show what the population of Mississippi County was at the time of the enactment of this statute. Appellants undertook to show, by the opinion of witnesses who claimed to have information on the subject, that the population of the county had diminished since the taking of the Federal census in the year 1920 below 45,000; and the testimony introduced by appellees tended to show that the population of the county had not diminished, but was as high or higher in numbers than at the taking of the Federal census. Appellees also introduced a resolution passed by the board of commissioners of the road district, declaring a finding that the population of the county was between 45,000 and 54,000. Appellees also introduced a certificate from the State Highway Engineer authorizing the commissioners to proceed under the statute referred to.

It is the contention of appellants that the statute is void for uncertainty, in that it fails to provide any method of ascertaining the population of the county. The contention of appellees is that the act impliedly authorizes either the State Highway Engineer or the board of commissioners of a road district in any county to determine whether the population of the county is such as to authorize proceedings under this statute.

We do not agree. with either of these contentions. Certainly there is nothing in the statute which, either expressly or by implication, authorizes the Highway Engineer to determine the population of a county. It is contended by counsel for appellees that the language of § 2 of the statute, which provides that, when the State Highway Engineer files with the board of commissioners a certificate stating that Federal aid was previously allotted to the district, but that said district would not receive Federal aid but for this act, "the board of such district shall then have jurisdiction and power to proceed under this act," necessarily confers authority upon the Highway Engineer or the board to determine the population of the county. We do not think that this is the correct interpretation of the language referred to, for the section does not deal, even remotely, with the question of the ascertainment of the particular locality where the terms of the statute apply. This language relates merely to a certificate of the Highway Engineer concerning a matter which comes strictly within his jurisdiction, *i. e.,* the question of allotment of Federal aid, and to the duty of the commissioners in the county where the population is such as to make the statute applicable to proceed upon the certificate of the Highway Engineer. Our conclusion, in the interpretation of the statute, is that, there being no provision made for the ascertainment of the population to determine the application of the statute, and, since the statute is obviously one to take immediate effect, the restriction in regard to population must be deemed to relate to the last Federal census, which is the only authoritative ascertainment of population. It is our duty, under well-known canons of construction, where the language of a statute is in doubt and it is reasonably open to two constructions, one of which will render it valid and the other will render it invalid, to adopt that construction which will make the statute valid; and, following this rule, we should assume that the Legislature intended, rather than to render the statute void for uncertainty, to adopt the one

and only definite means of ascertaining the population of the county to which the statute is to apply. This renders the statute definite and certain.

The next contention is that the statute is special and local in its application, and is void because notice of its introduction was not published in accordance with the requirement of the Constitution, which provides that no local or special bills shall be passed "unless notice of the intention to apply therefor shall have been published in the locality where the matter or the thing to be affected may be situated, which notice shall be at least thirty days prior to the introduction into the General Assembly of such bill." Constitution 1874, art. 5, § 26. If the statute in question be held to be special, or local, within the meaning of the Constitution, then the enactment is void for the reason that the notice was not given, and we cannot, under the circumstances, indulge any presumption that the notice was given.

The Governor's proclamation (of which we take judicial notice), calling the extraordinary session of the General Assembly, was dated and filed with the Secretary of State on September 8, 1923, and the bill for the statute now under consideration was introduced in the Senate on October 5, 1923, which was less than thirty days after the session was called, and there was not sufficient time within which to publish the notice. There is therefore no presumption that notice was given under these circumstances, but, on the contrary, the time between the calling of the session and the introduction of the bill in question being less than thirty days, it affirmatively appears that the provision of the Constitution could not have been complied with and that the statute is void. *Booe* v. *Road Improvement District*, 141 Ark. 140.

We proceed, then, to determine the nature of this legislation—whether or not it is special or local within the meaning of the Constitution. The statute is general in form, otherwise than as to the designation that its application shall be limited to counties having a population between 45,000 and 54,000. It applies, in fact, only

to Mississippi County, for, from an examination of the census report published by authority, it is seen that Mississippi County is the only county in the State which has a population between 45,000 and 54,000. The act was not prospective in its nature, but applies only to road districts to which Federal aid had been allotted in counties which, at the time of the passage of the act, had a population within the prescribed limits. The rule announced by nearly all of the authorities is that, in a judicial determination of the question as to the nature of a statute, whether general or special, the inquiry is not restricted to the form of the statute, but it reaches to a consideration of the necessary effect of the statute, regardless of its form. This doctrine is stated in 25 R. C. L., p. 815, as follows:

"In determining whether a law is public, general, special, or local, the courts will look to its substance and practical operation rather than to its title, form or phraseology, because otherwise prohibitions of the fundamental law against special legislation would be nugatory."

In another text-book the rule for determining the distinction between a special act and a general law is stated as follows:

" 'If its operation and effect must necessarily be special, the act is special, whatever may be its form. If, on the other hand, the act has room within its terms to operate upon all of a class of things, present and prospective, and not merely upon one particular thing, or upon a particular class of things existing at the time of its passage, the act is general. That the question is not one of form is expressly held as necessarily implied in all the cases, and, if this were not so, then the Constitution could be easily evaded 'by dressing up special laws in the garb and guise of general statutes'." I Lewis' Sutherland Statutory Construction, p. 359.

The same authority adds: "The question must be determined from the act itself and from the facts of which the court will take judicial notice."

There are many cases holding that a statute conferring powers upon sub-agencies of government, such as counties and municipalities, classifying them according to population, is general legislation and not special. Such a statute is necessarily prospective in its nature, and applies to all localities which come within the class. We have before us, however, a statute which, in its application, according to the test of which we may take knowledge, applies only to one county, and can never apply to any other, and the statute is necessarily local in its application. Nearly all of the authorities that we can find on the subject declare such legislation to be special rather than general. The authorities on this subject were reviewed by Chief Justice SHERWOOD in the case of *State* v. *Herrmann,* 75 Mo. 340, and a statute similar in effect to the one now before us was declared to be a special one, and void under the Constitution of Missouri. The Supreme Court of Illinois reached the same conclusion in regard to a similar statute which was construed in the case of *Devine* v. *Comrs. of Cook County,* 84 Ill. 590. Other authorities to the same effect are as follows: *Knopf* v. *People,* 185 Ill. 20; *Wheeler* v. *Philadelphia,* 77 Pa. St. 338; *State* v. *Mitchell,* 31 Ohio 592; *State* v. *Ellet,* 47 Ohio 90; *Topeka* v. *Gillett,* 32 Kas. 431; *State* v. *Hammer,* 42 N. J. L. 35; *State* v. *Des Moines,* 96 Iowa 521.

In the Kansas case cited above there was under consideration a statute which applied to cities of certain population, and the court said:

"Courts may take judicial notice of the census returns, of the general history of the country, of what the members of the Legislature ought to know when passing the statute which the courts are called upon to construe; and, indeed, of what all well-informed persons ought to know. And, taking judicial notice of all these things, we can say without hesitation that it was not possible for the said act of March 3, 1875, within the time which it was to have force and effect, to apply to any corporation except the three cities of Topeka, Lawrence

and Atchison. It would apply to just those three cities —no more and no less; and any person who would take the trouble to inform himself with regard to the matter would know it. Is such an act a general act, or is it merely a special act? It is our opinion that it is merely a special act.''

Now, the language of this statute shows that it was not prospective so as to include any other counties which might come within that population in the future, for it · related to such road districts only as were then in existence to which Federal aid had been alloted but not paid, and the test of population could only have related to the last census and not to any future census. In other words, this statute selected Mississippi County as its only field of operation as unerringly as if it had been made to apply to that county by name. The effect is therefore purely local, and, under the rule announced by the authorities, we must so treat it, and it follows that the statute is void because the notice of its introduction could not have been published for the length of time required by the Constitution. The decree of the chancery court was therefore erroneous, and it is reversed, and remanded with directions to enter a decree in favor of appellant, in accordance with the law herein stated.