Ronald J. LITTLETON and Jerry F. O'NEAL *v.*
E. P. BLANTON; The City of MARKED TREE, Arkansas,
by Howard DAWSON, Its Mayor; The STATE of Arkansas,
by Steve CLARK, Its Attorney General

83-163                                    665 S.W.2d 239

Supreme Court of Arkansas
Opinion delivered February 13, 1984

*Michael Everett,* for appellants.

*Burk Dabney* and *Mitchell, Williams, Selig, Jackson &amp; Tucker,* by: *Byron Freeland* and *Debra K. Brown;* and *Steve Clark,* Atty. Gen., by: *E. Jeffrey Story,* Asst. Atty. Gen., for appellees.

J. GASTON WILLIAMSON, Special Justice. Appellants

were tried and convicted of misdemeanor criminal charges in the Municipal Court of Marked Tree, Arkansas. The Marked Tree Municipal Court was created pursuant to Act 616 of the 1975 Acts of the General Assembly of the State of Arkansas ("Act 616"). Appellants challenged the validity of the Marked Tree Municipal Court on the ground that Act 616 violates the 14th Amendment to the Arkansas Constitution of 1874 which prohibits "local or special" legislation.

Act 616 provides that any municipality of the first class located in any county having a population of not less than 26,500 nor more than 28,000 according to the 1970 Federal Census may establish a municipal court with the same jurisdiction as courts of the Justice of the Peace, which jurisdiction shall be coextensive with the township. The mayor of the municipality, with the concurrence of the city council, may designate any qualified elector of the township, or any licensed attorney who maintains an office in the township, to serve as judge of the court, to be paid such monthly salary as the city council shall determine. After deducting fees and costs due the sheriff or other officers, there shall be paid to the municipality all sums collected in civil and criminal cases arising out of violations of city ordinances and one-half of all sums collected in civil and criminal cases arising out of violations of State laws in the township where the court is located. The Act recites that its purpose is to provide an alternative procedure for the creation of a municipal court by a city of limited financial means and lacking a local attorney.

Ark. Stat. § 22-701 et seq., is the general statute governing the creation, jurisdiction and operation of municipal courts in Arkansas. Act 616 differs from Ark. Stat. § 22-701 et seq., by providing that (1) the judge may be any qualified eletor (rather than an attorney of at least 25 years of age who has practiced at least 3 years, Sec. 22-704.4), (2) the judge may be appointed by the Mayor with the concurrence of the City Council (rather than be elected by the voters, Sec. 22-703), (3) the judge's salary may be fixed by the City Council (rather than by the Legislature, Sec. 22-704), (4) the jurisdiction of the court will be the same as a justice of the peace court and coextensive with the township (rather than a

jurisdiction broader than that of a justice of the peace court and coextensive with the county, Sec. 22-709), and (5) one-half of the fines for violation of state laws are to be paid to the city (rather than all of such fines being paid to the county where the arresting officer was not a city police officer, Sec. 22-719).

Pursuant to Act 616, the City of Marked Tree by Ordinance No. 115 created the Municipal Court of Marked Tree, and the Mayor, with the concurrence of the City Council, appointed E. P. Blanton as Municipal Judge. E. P. Blanton is not a graduate of any law school nor admitted to practice law in Arkansas, but he had served as judge of the Marked Tree Police Court for about 13 years prior to his appointment as Municipal Judge. At the time E. P. Blanton was appointed Municipal Judge, there were lawyers who would have qualified as a municipal judge for Marked Tree under Ark. Stat. 22-704 and 22-705 and who would have been willing to serve as municipal judge.

Act 616, applicable only to counties with a population between 26,500 and 28,000 in the 1970 Federal Census, applies only to Poinsett County and can never apply to any other county. There are five cities of the first class in Poinsett County, all of which have a Municipal Court, but Marked Tree is the only municipal court with a non-lawyer municipal judge.

An admirable historical background to an understanding of the Arkansas cases decided under Amendment 14 may be found in "Special and Local Acts in Arkansas," by Robert M. Anderson, 3 Arkansas Law Reivew 113 (1949). Prior to Amendment 14, this Court had routinely invalidated acts expressly limited to named political units; consequently, the General Assembly, as a means of enacting bills of limited application, turned to class legislation which this Court had previously said was not *per se* local or special. *Farelly Lake Levee District* v. *Hudson,* 169 Ark. 33, 273 S.W. 711 (1925). An act is not local or special simply because it is limited to a class consisting of less than all citizens of the state or less than all of its territory. However, generality ends and specialty begins where the class established by the act has no

reasonable relation to the purpose or subject matter of the enactment or omits from its operation persons or areas which would fall naturally into the class to which the act is limited. *McLaughlin* v. *Ford,* 168 Ark. 1108, 273 S.W. 707 (1925); 2 Southerland, Statutory Construction, sec. 2104 and sec. 2106. The Court may look outside of the act and consider any fact of which judicial notice may be taken to determine if its operation and effect is special, regardless of its form. *Ash-Ark Lumber Company* v. *Pride & Fairley,* 162 Ark. 235, 258 S.W. 335 (1924). As this Court held in *Simpson* v. *Matthews,* 184 Ark. 213, 216, 40 S.W.2d 991, 992 (1931):

> "The classification of counties and municipalities is legitimate when population or other basis of classification bears a reasonable relation to the subject matter of the legislation, and the judgment of the legislature should control unless the classification is arbitrary or is manifestly made for the purpose of evading the Constitution."

Where the class employed to limit the application of an act consists of a single county, city or district, this Court has often concluded that the act is special or local within the meaning of Amendment 14. See, for example, *State ex rel. Burrow* v. *Jolly, County Judge,* 207 Ark. 515, 181 S.W.2d 479 (1944); *Simpson* v. *Matthews,* supra; *McLellan* v. *Pledger, County Treasurer,* 209 Ark. 159, 189 S.W.2d 789 (1945); *Street Improvement Districts Nos. 581 and 585* v. *Hadfield,* 184 Ark. 598, 43 S.W.2d 62 (1931); and *Laman, Mayor* v. *Harrill,* 233 Ark. 967, 349 S.W.2d 814 (1961). Were it not for the "administration of justice" exception hereinafter discussed, this Court would have no hesitancy to declare Act 616 invalid under Amendment 14.

Amendment 14, adopted in 1926, is simple and concise: "The General Assembly shall not pass any local or special act. This shall not prohibit the repeal of local or special acts." Arkansas is the only state with a Constitution which declares its total disapproval of this type of legislation, with no exceptions (see "Special and Local Acts in Arkansas," supra). But this Court appears to have carved out as an exception to Amendment 14 acts relating to the administration of justice.

The origin of this exception lies in *Waterman* v. *Hawkins,* 75 Ark. 120, 86 S.W. 844 (1905), decided in 1905 when the Constitution provided that no special law shall be enacted without prior publication of notice of such proposed act and without evidence of such publication being exhibited to the Legislature. In that case this Court upheld an act which abolished a judicial district in Desha County and provided for a transfer of its cases to another court. This Court sustained the special act on the basis of a conclusive presumption that the required notice was in fact published and exhibited to the Legislature. However, the Court went on to hold that the statute was not a local or special bill within the meaning of the constitutional requirement of publication, and said (p. 125 and p. 846):

> "Statutes establishing or abolishing separate courts relate to the administration of justice, and are not either local or special in their operation. Though such an act relates to a court exercising jurisdiction over limited territory, it is general in its operation, and affects all citizens coming within the jurisdiction of the Court."

The Court borrowed this rule from the Missouri case of *State* v. *Yancy,* 123 Mo. 291, 27 S.W. 380 (1894), from which it quoted the following language with approval:

> " 'Whether an act of the Legislature be a local or general law must be determined by the generality with which it affects the people as a whole, rather than the extent of the territory over which it operates; and if it affects equally all persons who come within its range, it can be neither special nor local within the meaning of the Constitution.' "

Of course, that language states a standard which might be applied to any statute regardless of subject matter, but the Missouri case obviously intended to limit its application to the judicial system. Its holding was based upon the principle that the judicial system of the state is a composite whole, that a circuit court within and for a county is still a state court, not a local court, and that any law passed by the Legislature

with reference to a particular circuit court, though not applicable to every court of like nature within the state, is not a local act within the meaning of a constitutional restriction on local or special acts. We have also recognized that as the rationale of the Missouri case on which *Waterman* was based. *Cannon* v. *May,* 183 Ark. 107, 109, 35 S.W.2d 70, 71 (1931).

While the *Waterman* case has frequently been cited as authority for the rule that acts relating to the administration of justice are neither local nor special within the meaning of the Constitution [see, for example, *City of Stuttgart* v. *Elms,* 220 Ark. 722, 249 S.W.2d 829 (1952)], this Court has never been comfortable with the rule so broadly stated nor consistent in its application.

In *Buzbee* v. *Hutton,* 186 Ark. 134, 52 S.W.2d 647 (1932), this Court held that an act making the Pulaski Chancery Clerk appointive rather than elective was not unconstitutional as a local or special act. While citing the above-quoted language from the *Waterman* case, Special Judge Lamar Williamson reviewed the reasons why the Chancery Court of Pulaski County, the seat of the State government, was different from other chancery courts and in a class by itself, and held that the classification limited to Pulaski County was not unreasonable or arbitrary.

However, in *Sebastian Bridge District* v. *Lynch,* 200 Ark. 134, 138 S.W.2d 81 (1940) and *McLellan* v. *Pledger,* 209 Ark. 159, 189 S.W.2d 789, this Court held that acts increasing the salary of the court reporters for the Fourth and Tenth Chancery Districts did not violate Amendment 14, since a court reporter was an essential officer in the administration of justice. The Court cited *Buzbee* v. *Hutton,* supra, as authority for its decision, without mentioning the uniqueness of the Pulaski Chancery Court discussed in the *Buzbee* case.

On the other hand, our Court has held unconstitutional as special or local legislation a number of acts which clearly relate to the administration of justice. In *Cannon* v. *May,* supra, an act fixing the salary of the county and probate

clerk of Hempstead County was held to be unconstitutional as a local or special act. Although the Court cited the *Waterman* case, it appeared to limit the *Waterman* rule to statutes establishing or abolishing courts rather than to acts merely relating to the administration of justice.

Acts relating to the payment of jurors in Arkansas County [*Norsworthy* v. *Searan,* 185 Ark. 98, 46 S.W.2d 6 (1932)] and the payment of a circuit clerk and his deputies in Garland County [*State* v. *Jones,* 193 Ark. 391, 100 S.W.2d 249 (1937)] were found to be special or local legislation without reference to the *Waterman* case or to its exception of acts relating to the administration of justice. In *Wilson* v. *State,* 222 Ark. 452, 261 S.W.2d 257 (1953), an act fixing the fees of justices of the peace in Baxter County was held to be unconstitutional as local or special legislation. The Court implied that the frequently (and above) quoted language in the *Waterman* case was dicta, and that the fees paid to justices of the peace were not "indispensable to the administration of justice."

In recent years the Court has grown increasingly concerned with and critical of the exception. In *Beaumont* v. *Adkisson,* 267 Ark. 511, 593 S.W.2d 11 (1980), this Court held as invalid under Amendment 14 an act which permitted the judge of only one division of the five divisions in the Sixth Judicial Circuit to set salaries for court personnel. Although the act clearly related to the administration of justice, this Court said (p. 514 and p. 13):

> "The only way that Act 629 could be legal is if it were held to be an act relating generally to all circuit courts in the Sixth Circuit and it is determined to be essential to the administration of justice."

*Board of Trustees of Municipal Judges and Clerks Fund* v. *Beard,* 273 Ark. 423, 620 S.W.2d 295 (1981), involved the constitutionality of Act 155 of 1979 which added a fourth classification of eligibility for municipal court clerk retirement by including any clerk who had served at least 20 consecutive years as a city employee with at least 8 of such years as municipal clerk. The act by its terms applied only

to municipal court clerks in municipalities situated in counties of more than 150,000 population, which at the time of its passage included only Pulaski County. Although there were four municipal courts in Pulaski County, the act was specifically enacted to make appellee, Clerk of the Little Rock Municipal Court, eligible for immediate retirement. This Court held that Act 155 was special legislation prohibited by Amendment 14, since the fourth classification was arbitrary and unreasonable, was intended to separate appellee from other municipal clerks and did not treat all municipal clerks within Pulaski County equally. Special Justice Joseph C. Kemp said (p. 428 and p. 297):

"All municipal court clerks in Pulaski County, and in all other counties of the State for that matter, have the same duties, authority and responsibility, functioning as a distinct essential arm of their respective courts, and while this Court has held that legislation pertaining to the judiciary, though dealing differently among counties and courts, is general as opposed to local or special for the reason that the judicial system for the State is an entity in and of itself, whole and not separate, nevertheless this Court has also held that even in dealing with the judiciary, all which should fall equally within a classification must be included and not separated out as in the case of Act 155. See *Beaumont* v. *Adkisson,* 267 Ark. 511, 593 S.W.2d 11 (1980)."

In a concurring opinion, one justice acknowledged that this Court had carved out an exception to Amendment 14, i.e. that special legislation is valid if it is essential to the administration of justice. He stated that such an exception is unwarranted, improper and contrary to the Constitution and should cease. In the case at bar, appellants also argue that the exception be abolished.

Despite the fact that Act 616 clearly relates to the administration of justice, we hold that the statue violates the Amendment 14 prohibition against local or special acts and is void.

Act 616 can never apply to any county other than Poinsett County. The announced purpose of the Act is to enable a city of the first class but of limited financial means and lacking a local attorney an alternative means of creating a municipal court; but a population classification applying only to a county of not less than 26,500 nor more than 28,000 according to the 1970 Federal Census is arbitrary and has no reasonable relationship to cities of limited financial means or lacking a local attorney. According to the 1970 census, Marked Tree had a population of 3,208; there were 32 municipalities in Arkansas with a population of between 2,500 and 5,000 in 1970. There could well have been cities of limited financial means and lacking a local attorney in counties other than Poinsett County.

The Act authorizes the creation of a hybrid municipal court in Poinsett County. It differs from municipal courts in every other county in Arkansas in respect to the qualifications, selection and salary of the municipal judge, the jurisdiction of the court and the disposition of its fines. All five cities of the first class in Poinsett County have municipal courts, but only Marked Tree has created one with a non-lawyer as Municipal Judge, even though there were qualified attorneys who were available to serve. Whether or not Act 616 was passed for the benefit of E. P. Blanton, limiting the Act to Poinsett County is arbitrary and bears no reasonable relation to the announced intention of the Act to provide an alternate procedure for the creation of a municipal court by a city of limited financial means and lacking a local attorney. If there was in fact a real need for such a court, it is arbitrary and unreasonable to assume that such a need existed only in Poinsett County. Act 616 is a shining example of the type of local and special legislation which the people sought to stop by the adoption of Amendment 14.

With commendable conciseness preferred in constitutional pronouncements, Amendment 14 does not define the terms "local" or "special"; yet the people instinctively knew the type of "local and special" legislation which should be stopped. While this Court has from time to time attempted to define "local" or "special" within the meaning

of Amendment 14 (for example, *Board of Trustees of Municipal Judges* v. *Beard,* supra), it is very difficult to frame an all-inclusive definition, and perhaps it is best that we not attempt to do so. Within the meaning of Amendment 14, a statute is not necessarily "special" if it applies only to some limited persons or things; nor is a law invariably "local" if it applies only to a limited area. It depends in each case upon the subject matter of the legislation, the need to be met and the classification used or factors considered to ensure fairness and non-discrimination in the application of the statute.

With respect to the so-called administration of justice exception, we announce that statutes relating to the administration of justice will no longer be held *per se* to be neither local or special within the meaning of Amendment 14. Of all areas of legislation, the administration of justice above all should be immune to the evils of discriminatory laws and pork-barreling which Amendment 14 was designed to end. While the Legislature has the authority to establish courts within the limits prescribed by the Constitution, it should strive to create a judicial system throughout the State which is as uniform as practical.

A densely-populated metropolitan area requires more judges, court personnel and different procedures than does a thinly-populated area. The Legislature has traditionally met the growing judicial needs of an area by statutes which apply only to individual counties, judicial districts or even divisions within districts. But these statutes have not been held to be "local or special" within the meaning of Amendment 14, since they were a part of a judicial system for the entire state and were based upon reasonable consider-ations such as population, case load, transportation and other non-discriminatory factors or classifications.

There is a presumption of constitutionality attendant to every legislative enactment, and the judgment of the Legislature should control unless the classifications used or factors considered are arbitrary and for the purpose of evading the Constitution. *Simpson* v. *Matthews,* supra. No "administration of justice" exception to Amendment 14 is

needed or proper. As shown above, such an exception has only added to confusion and conflict in the cases on the subject. We will continue to hold that statutes designed to meet the judicial needs of an area on a non-discriminatory basis are a part of a judicial system for the entire state and are not local or special within the meaning of Amendment 14, even though such statutes may apply only to individual counties, judicial districts or divisions within districts. However, merely because a statute relates to the administration of justice will no longer be "a permissible point of penetration into Amendment No. Fourteen" (*State ex rel Burrow* v. *Jolly, County Judge,* supra, at p. 518) and a guaranty of its constitutionality. The limited application of the statute must be non-discriminatory and bear a reasonable relation to the subject matter of the legislation.

Reversed.

HAYS, J., not participating.