The Honorable Myra Jones State Representative 2001 North Tyler Little Rock, Arkansas 72207
Dear Representative Jones:
This is in response to your opinion request regarding the constitutionality of Act 840 of 1987.
Act 840 amends in part Act 808 of 1977 (codified as Ark. Stat. Ann. 19-902.5 — 19-902.9 (1980 Supp. 1985)) which provides the procedure for elections of governing boards of Arkansas cities. 19-902.6 (1980) reads in pertinent part:
 In the event the number of members on the governing board of any such city shall be an uneven number, a number of districts or wards shall be established in each city equal to fifty percent (50%) plus one [1] of the members of the governing board (i.e. a seven-member board — four [4] members to be elected from districts. . .). Each such district shall be divided into substantially equal population, and one [1] member of the governing board of directors shall be elected from each such district. . . . The remaining members shall be elected from the city at large and shall run for designated positions (i.e., Position One, Position Two, et cetera). . . . In the event a city affected by this Act operates under a board of managers, Position One [1] of the at-large positions shall be reserved for election of the board of manager [managers] member who shall be the Mayor of said city . . .
19-902.9 (1980) provides that:
 [t]he provisions of this Act . . . shall not be applicable to any city in the state having a manager form government and located in a county having a population of 100,000 or more persons. Provided however, any such city may by ordinance of the governing body thereof approved by a majority of the qualified electors of such city voting on the question, choose to elect all or part of the members of the governing body of the city from single member districts.
Therefore, the provisions of Act 808 of 1977 did not apply to cities located in counties of greater than 100,000 persons and having a manager form of government. Such a city could, however, by a vote of the people choose to elect all or part of the members of the city's governing body from districts.
19-902.9 was amended by Act 840 of 1987, which provides in Section 1 as follows:
 The provisions of this Act shall not be applicable to any city in the State having a manager form of government and having a population of 30,000 or more persons, unless such city by ordinance of the governing body thereof chooses to be subject to this Act. Provided however, any such city may by ordinance of the governing body thereof approved by a majority of the qualified electors of such city voting on the question, choose to elect all of the members of the governing body of the city from single-member districts.
Therefore, the provisions of Act 808 of 1977 do not apply to cities having a population of 30,000 or more persons and a manager form of government. However, a city's governing body can now choose to be subject to the provisions of Act 808 without submitting the question to the voters. A popular vote is still required for the election of all members of the governing body from districts.
Thus, the amended section changes the population requirement from a county population of less than 100,000 to a city population of less than 30,000. The section also changes the requirement of a vote of the people to choose to elect part of the city board members from districts to an allowance that the board can make such a decision without submitting it to a popular vote.
The questions to consider, then, are:
 1. Does the population limitation constitute local legislation?
 2. Does the modification of a city manager form of government from seven directors elected at large to partial election from wards require a vote of the people, or can the modification be decided upon by the city's board of directors?
Another issue that will be explored is the possible legal challenge based on equal protection violations.
The Local Legislation Issue
Amendment Fourteen of the Arkansas Constitution states that "[t]he General Assembly shall not pass any local or special act." The Arkansas Supreme Court has defined "local" as a law which "applies to any subdivision or division of the state less than the whole." Laman v. Harrill, 233 Ark. 967, 970, 349 S.W.2d 814, 816 (1961). In another case, the court stated that
an act is not local. . .simply because it is limited to a class consisting of less than. . .all of its territory. However, generality ends and specialty begins where the class established by the act has no reasonable relation to the purpose or subject matter of the enactment or omits from its operation. . .areas which would fall naturally into the class to which the act is limited.
Littleton v. Blanton, 281 Ark. 395, 398, 665 S.W.2d 239, 241
(1984). Accord, Thomas v. Foust, 245 Ark. 948, 435 S.W.2d 793
(1969); See, also, Venhaus v. Lofton, 285 Ark. 23, 30, 684 S.W.2d 252,256 (1985) (Hickman, J., concurring); Lawson v. City of Mammoth Spring, 287 Ark. 12, 13, 696 S.W.2d 712, 713 (1985). The Court in Littleton further stated that
[w]hile this court has from time to time attempted to define "local". . .within the meaning of Amendment 14. . .it is very difficult to frame an all-inclusive definition and perhaps it is best that we not attempt to do so. . .
[A] law is [not] invariably local if it applies only to a limited area. It depends in each case upon the subject matter of the legislation, the need to be met and the classification used or factors considered to ensure fairness and non-discrimination in the application of the statute.
Littleton v. Blanton, 281 Ark. 395, 404-05, 665 S.W.2d 239, 244
(1984).
Prohibited local legislation must arbitrarily separate one place from another. Board of Trustees, University of Arkansas v. Pulaski County, 229 Ark. 370, 375, 315 S.W.2d 879, 882 (1958). The test to be used in determining whether the classification is arbitrary is one akin to a rational basis test under the Fourteenth Amendment. Streight v. Ragland, 280 Ark. 206, 213, 655 S.W.2d 459,463 (1983). The question, then, is whether the classification in the Act has any rational relationship to a legitimate objective the General Assembly sought to accomplish by enactment of the law.
Section 3 of Act 840 of 1987 provides in pertinent part:
 It is hereby found and determined that Act 808 of 1977 provides for ward representation and direct election of mayors of cities operating with a city manager form of government; that certain cities affected by this Act have either voted or petitioned for such features in their municipalities and that substantial public funds could be saved by implementing this Act immediately.
This section certainly appears to provide a rational basis for the enactment of the legislation. Further, Act 840 of 1987 amends Act 808 to lower the population limitation. Thus, Act 840 presumably will broaden the scope of Act 808's applicability, not limit it. It is our conclusion, therefore, that Act 840 of 1987 is not local legislation.
The Selection of Directors Issue
We have determined that it is proper for the Board of Directors to change the manner in which directors are selected — from seven directors at-large to four directors by ward election, two members at-large, and a popularly elected mayor ("4-3") — without referring the ordinance for an election.
Article 12, Section 3 of the Arkansas Constitution states that "[t]he General Assembly shall provide, by general laws, for the organization of cities. . .and incorporated towns. . ." Thus, the Legislature has the authority to determine how municipal governments will be organized.
Act 99 of 1921 (codified as Ark. Stat. Ann. 19-701 — 19-733 (1980 Supp. 1985)) empowered cities having a population of at least 2,500 to organize under a manager form of government, with city directors to be elected by the electors of the city at large. A reorganization to the manager form of government requires a vote of the electors. (19-702). Further, a reorganization from the city manager form of government to an aldermanic form requires a popular vote as well. Act 840 of 1987, however, only involves a change in the voting method for electing city directors. It does not involve a complete reorganization of the form of city government. The fact that an election was initially required to organize the city manager form of government does not dictate that an election be held to modify the voting methodology.
Further, because the Act providing for organization of a city manager form of government (Ark. Stat. Ann. 19-701 et seq. (1980)) is complete within itself, it is independent of the 7th Amendment of the Arkansas Constitution. See Knowlton v. Walton, 189 Ark. 901,75 S.W.2d 811 (1934). Amendment 7 provides in part that a measure initiated by the people can only be amended by a 2/3 vote of the governing body. Because the act providing for a city manager government sets out its own procedure for putting it into operation (19-702), which is different from the procedure provided in Amendment 7, the provisions of Amendment 7 do not apply.
Finally, we find no basis for a challenge to Act 840 arising from the distinction requiring an election for a change to seven single-member districts, but not for the "4-3" modification. Such a distinction is within the Legislature's broad discretion in exercising its constitutional authority to determine how the representatives of municipal governments are selected.
Therefore, it is our opinion that the Arkansas Constitution gives the Legislature the authority to confer upon a city Board of Directors the power to change the manner in which it is elected. Act 840 of 1987 is merely the exercise of such authority.
The Equal Protection Issue
A possible challenge to the provisions of Act 840 of 1987 is based on the argument that the "4-3" modification is unfair to black voters, and the at-large elections serve to dilute black voting strength. Some opponents of Act 840 may argue that a seven-ward system is the only fair method for black voters. This issue has been addressed several times.
The Supreme Court has held that no group has the right to elect representatives proportionate to its voting power in the community. Mobile v. Bolden, 446 U.S. 55, 79 (1980). But the right to vote can be denied by dilution as effectively as if the right had been denied by prohibition. Reynolds v. Sims, 377 U.S. 533,555 (1964). Under the Mobile plurality, the plaintiff must prove the plan was conceived or operated as a purposeful device to further racial discrimination. 446 U.S. at 66.
Thus, it appears that an at-large system is not unconstitutional without some evidence of discriminatory intent. See Perkins v. City of West Helena, 675 F.2d 201 (8th Cir. 1982); Leadership Roundtable v. City of Little Rock, 499 F. Supp. 579 (E.D.Ark. 1980) aff'd661 F.2d 701 (8th Cir. 1981); Dove v. Bumpers, 364 F. Supp. 407
(E.D.Ark. 1973), aff'd in Dove v. Moore, 539 F.2d 1152 (8th Cir. 1976). In Leadership Roundtable, the court specifically held that Little Rock's at-large system of electing directors does not unconstitutionally dilute the voting strength of blacks. 499 F. Supp. at 594. The court further held that there was no racially discriminatory motive involved in Little Rock's adoption of the city manager form of government, and that blacks have the same opportunity as other citizens of Little Rock to participate in the political process.499 F. Supp. at 592-93.
There appears to be no evidence of racially discriminatory intent in the adoption of Act 840 of 1987. In fact, the modification from electing all directors at-large to only 3 at-large and 4 from wards seems to suggest the opposite. It is reasonable to conclude, therefore, that a 14th Amendment challenge to Act 840 would also fail.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.