Honorable Jim Shaver State Representative P. O. Box 592 Wynne, AR 72396
Dear Representative Shaver:
You have requested an official opinion regarding the constitutionality of Act 600 of 1987.
Act 600 provides, in pertinent part, that operators of underground facilities (which include publicly and privately owned utilities) shall file notice with the Arkansas One Call Center identifying their underground facilities so that any person planning to excavate in an area where underground facilities exist may have notice of those facilities. Also, the owner will have notice of the proposed activity and can determine which entity could be held responsible for any damage that might occur during excavation.
With this frame of reference, you ask the following specific questions:
 (1) The definition of "operator" in subsection (f) of Section 2 includes by property-owners associations, improvement districts, or property developers, serving in excess of one hundred (100) customers" The one hundred (100) customer threshold appears to be discriminatory, arbitrary and capricious and perhaps makes the Act local or special legislation.
 (2) Section 3 of the Act lists a number of exemptions from the notice requirements, and as a result of these exemptions the Act appears to be discriminatory and local and special legislation.
 (3) Section 4 of the Act grants cities, counties and rural water associations the option to choose no later than January 1, 1989 whether to be subject to its provisions. However, cities, counties and rural water associations formed after January 1, 1989 are not given that option and therefore Section 4 appears to be discriminatory.
 (4) Section 8 requires all underground facility operators to become members of the One Call Center. The One Call Center is apparently a corporation formed under the nonprofit corporation laws of this State and not only is it not an agency of this State, it is not even regulated by the State. To mandate by law that underground facility operators must become members of this nonprofit corporation seems fundamentally unconstitutional.
 (5) Subsection (c) of Section 11 provides that the Act does not apply to the State Highway Commission nor the State Highway and Transportation Department. Since that exemption applies to only two agencies of the State it is discriminatory.
 (6) Section 13 exempts from the Act cable television companies located in counties having a population of less than 40,000 persons, and therefore is discriminatory and violates the local and special legislation prohibition of our Constitution.
Since some of your questions presume unconstitutionality in contravention of Amendment 14 to the Arkansas Constitution, it would be helpful to first set out the legal principles which apply to that Amendment.
Amendment 14 to the Arkansas Constitution states that "(t)he General Assembly shall not pass any local or special act."
In Laman v. Harrill, 233 Ark. 967, 970, 349 S.W.2d 814 (1961), the Arkansas Supreme Court outlined what it considered "special," equating this term with a law which arbitrarily separates some person, place or thing from those on which, but for such separation, it would operate. Accord, Hensley v. Holder,228 Ark. 401, 307 S.W.2d 794 (1958) and Knoop v. City of Little Rock,277 Ark. 13, 683 S.W.2d 670 (1982). It is clear, however, that a statute which applies only to a separate class of persons is not per se invalid under Amendment 14. Rather, the Court will look to the subject matter of the legislation and determine whether the limitation in the Act is reasonably related to this subject matter. As stated in Littleton v. Blanton, 281 Ark. 395, 405, 665 S.W.2d 239 (1984):
 Within the meaning of Amendment 14, a . . . law (is not) necessarily special if it applies only to one limited persons or things. It depends in each case upon the subject matter of the legislation, the need to be met and the classification used or factors considered to insure fairness and non- discrimination in the application of the statute.
While it must therefore be initially determined whether this legislation separates a class of persons from the general operation of laws, which Act 600 clearly does, an assessment must also be made to determine whether it constitutes impermissible special legislation within the meaning of Amendment 14.
The test to be used in assessing this arbitrariness is similar to a rational basis test under the 14th Amendment to the United States Constitution, Streight v. Ragland, 280 Ark. 206, 213, 655 S.W.2d 459
(1983) reh. den. September 19, 1983; that is, whether the classification in the Act bears any rational relationship to a legitimate objective the General Assembly sought to accomplish by enactment of the law.
Also, at issue is the Fourteenth Amendment to the United States Constitution which prohibits the denial of equal protection of the laws to citizens.
The standard which the State must meet in order to withstand constitutional attack as to equal protection is summarized above, as the rational relationship test.
Finally, a strong presumption of constitutionality attaches to every legislative enactment. Littleton v. Blanton, supra, at 405.
Applying these principles to Act 600:
(1) Subsection (f) of Section 2 of Act 600 defines an "operator" as inclusive of those non-public utilities serving in excess of one hundred (100) customers. By limiting the application of Act 600 to those utilities serving over 100 customers, the Legislature could have implicitly recognized that administration of the Act to small, perhaps rural, property owner associations or improvement districts would be burdensome and inefficient. Certainly, by establishing a threshold number for application of the Act, the Act technically becomes "special" legislation. However, the Arkansas Constitution, as interpreted by the Arkansas Supreme Court, does not prohibit all such legislation, but that which is impermissible. It can be inferred that for purposes of administering the Act, the Legislature reasonably set the "100 customer" limit.
(2) Section 3 of the Act, a list of exemptions, represents a valid legislative exercise, so long as those persons exempted are reasonably excluded from the operation of the Act. For instance, it is apparent that the Legislature did not intend to regulate excavation, tilling or plowing on private property, grave digging, routine road work and maintenance and work at certain pre-engineered projects.
These exemptions seem reasonably related to the purpose of Act 600 as set out in its title — to enhance the public safety by prevention of unsafe excavation or demolition operations which could result in damage by and to underground facilities. The daily activities of farmers, highway maintenance crews on roadsides, those who excavate in cemeteries or who work on certain pre-engineered projects could rationally have been determined by the Legislature not to constitute a public safety threat.
(3) Section 4 of the Act allows cities, counties and rural water associations to choose the option of whether they desire to be subject to the provisions of the Act and such choice must be indicated by adoption of an ordinance or resolution on or before January 1, 1989, or said entity will automatically become subject to Act 600. These entities, if formed after January 1, 1989, would be subject to Act 600. Such provisions are a common legislative device of "grandfathering"; i.e., to allow those persons or groups not formerly subject to a certain Act to remain in the same status. Presumably, the Legislature intends thereby to give notice that a law they pass will be effective in the future; that they have now determined certain conduct should be illegal and steps will be taken in the future to ensure compliance with the policy of the State as enunciated by the Legislature.
Of course, at this stage, any challenge based upon the unconstitutionality of Section 4 would be premature as the choice of options has not yet occurred.
Then, again, it must be analyzed as to whether grandfathering out certain classes represents an unconstitutional denial of equal protection. If the Legislature reasonably concluded that those entities which had not operated within the parameters of Act 600 in the past should be given the choice not to do so in the future, this Section would not be a violation of the equal protection clause. Such a conclusion and the consideration of the Legislature giving notice lead me to believe that Section 4 does not rise to the level of unconstitutionality.
(4) The Legislature has the authority to mandate participation in a program, be it through a non-profit corporation or a state agency. Nothing in the Arkansas or United States Constitution prohibits such a mandate.
(5) Section 11(c) of the Act exempts the Arkansas State Highway Commission and the State Highway and Transportation Department. This exemption is consistent with that found in Section 3 of the Act as to road repair and maintenance.
Your question states "Since that exemption (Sec. 11(c)) applies to only two agencies of the state it is discriminatory." Again, the exemption, while it separates classes from operation of the Act, is not legally impermissible if those exemptions have any rational basis. The Legislature could easily have concluded that these two state agencies would normally fall within the Act's prohibitions because of the nature of the tasks they perform; however, they are subject to other governmental controls and can be sued in the State Claims Commission. Thus, the Legislature could reasonably have concluded these two entities should be exempt from Act 600.
(6) Section 13 of the Act states:
 The provisions of this Act shall not be applicable with respect to the operations or facilities of any cable television company in any county in the State having a population of less than 40,000 persons.
According to information received from the State Data Center, 63 Arkansas counties have less than 40,000 persons and of those, all have at least one cable television operating outlet. With relation to the stated purpose of the Act as the enhancement of public safety, no facially apparent reason exists for exclusion of cable television outlets in counties of 40,000 or less. Therefore, Section 13 of Act 600 may be constitutionally suspect. It is worth noting that Act 600 does contain a severability clause which provides that if any Section of the Act is held invalid, the remainder of the Act shall not be affected.
I do not note any possible constitutional infirmities in Act 600 other than those discussed above.
The foregoing opinion, which I hereby approve, was prepared by Solicitor General R.B. Friedlander.