Floyd G. VILLINES, III, as County Judge of Pulaski County, et al. *v.* Jim Guy TUCKER, Governor of the State of Arkansas

95-642                                                    918 S.W.2d 153

Supreme Court of Arkansas
Opinion delivered March 25, 1996

*Nelwyn Davis* and *Duncan & Rainwater*, by: *Mike Rainwater*, for appellants.

*Winston Bryant*, Att'y Gen., by: *Angela S. Jegley*, Senior Asst. Att'y Gen., for appellee.

TOM GLAZE, Justice. The Pulaski County Judge and Quorum Court and fifty-one other county officials initiated this suit against the Governor, asking the Pulaski County Chancery Court, Sixth Division, to declare unconstitutional certain statutes dealing with the funding of the administration of justice in Arkansas. As background information, the state appropriates money for salaries of trial court judges, prosecuting attorneys, and also partially pays court reporters and some court bailiffs. However, the General

16

Assembly requires the respective counties to fund the other expenses of the trial court system under Ark. Code Ann. § 14-14-802(a)(1) (1987). These other expenses include the costs of courthouse space, operating expenses for the office of the judge and prosecutor, court and prosecuting attorney personnel, public defender staffs, and court clerk staffs and operating expenses. In order to pay these expenses, counties have been statutorily authorized to assess and collect certain costs, fees and fines, but in some instances, these revenues have been insufficient to underwrite all administration-of-justice expenses. As a consequence, some counties have had to resort to the use of general county revenues from property and sales taxes and state turnback funds to pay the balance of such expenses. Because they have been required to utilize county revenues to subsidize the costs of the trial court system in the state, the counties claim the court funding mechanism is unconstitutional. In their complaint, the counties alleged the funding system was unconstitutional in the following three ways:

(1) It allows the state legislature to usurp county legislative authority that violates Ark. Const. amend. 55, §§ 1(a) and 4, and Ark. Const. art. 16, § 40;

(2) the payment of county locally generated funds for the state court system constitutes an illegal exaction that violates Article 16, §§ 11 and 13; and

(3) it creates a system of local and special legislation that violates Amendment 14 to the state constitution.

After an extensive trial, the trial judge rejected the counties' constitutional claims. Only the Pulaski County officials appeal the chancellor's order.

In framing its first point for reversal, Pulaski County combines the above three legal claims made at trial, and states the chancellor erred in holding that the General Assembly can require counties to expend county funds on the state judicial system and in so holding, she also erred in deciding such expenditures are not illegal exactions. Pulaski County's arguments run counter to Arkansas's settled law.

First, we point to an enabling statutory provision of Amendment 55, § 14-14-802(a)(1), which imposes the duty upon the respective counties to provide for the necessary services of the

administration of justice. While Pulaski County contends this stat-
ute is unconstitutional and contravenes Amendment 55, § 1(a)
because it requires the expenditure of county funds for state and not
county purposes, the county is mistaken in characterizing the
administration of justice as being only a state purpose or responsi-
bility. In *Mears v. Hall,* 263 Ark. 827, 569 S.W.2d 91 (1978), this
court clearly explained, as follows, the role of the respective coun-
ties in providing services for the administration of justice:

> In *Burrow v. Batchelor,* 193 Ark. 229, 98 S.W.2d 946, we
> held that the salaries of the duly appointed reporter and
> stenographer for the grand jury and of the duly appointed
> and acting court reporter in the Fifteenth Judicial Circuit
> were a part of the necessary expenses of the operation of
> county government of Franklin County, which was part of
> the Fifteenth Judicial District. This, of course, was based
> upon the fact that the services of these reporters were essen-
> tial to the administration of justice. *Counties are civil divisions
> of the state for political and judicial purposes and are its auxiliaries
> and instrumentalities in the administration of its government. Lake
> v. Tatum,,* 175 Ark. 90, 1 S.W.2d 554. *They are a political
> subdivision of the state for the administration of justice and local
> government. Pulaski County v. Reeve,* 42 Ark. 54. *The very word
> "county" signifies a circuit or portion of the state resulting from a
> division of the state into such areas for the better government thereof
> and the easier administration of justice.* 56 Am. Jur. 2d 74,
> Municipal Corporations, etc. § 5. *Nothing in Amendment 55
> changes the status of the county insofar as its primary purposes and
> functions are concerned. The administration of justice within the
> county is one of the primary reasons for its existence.* (Emphasis
> added.)

*See also Mears v. Ark. State Hospital,* 265 Ark. 844, 581 S.W.2d 339
(1979) (counties are obligated to pay for costs of the administration
of justice where required to do so by the legislature); *Venhaus v.
State,* 285 Ark. 23, 684 S.W.2d 252 (1985); *Mackey v. McDonald,*
255 Ark. 978, 508 S.W.2d 726 (1974).

By the foregoing authority, this court has made itself
clear that our respective counties are responsible for the administra-
tion of justice. However, that does not end the inquiry, because
when the General Assembly enacts legislation relating to the

administration of justice, that law must meet the dictates of Amendment 14 to the Arkansas Constitution prohibiting special and local acts. In this respect, Arkansas's earlier cases state the rule that laws relating to the administration of justice were to be neither local nor special within the meaning of Amendment 14.[1] However, this court in *Littleton* v. *Blanton*, 281 Ark. 395, 665 S.W.2d 239 (1984), modified that rule somewhat. There, the court announced that statutes relating to the administration of justice would no longer be held *per se* to be neither local nor special within the meaning of Amendment 14. The *Littleton* court stated that, while the General Assembly has the authority to establish courts within the limits prescribed by the Constitution, it should strive to create a judicial system which would be as uniform as practical throughout the state. The court explained the General Assembly's responsibilities in this regard as follows:

> A densely-populated metropolitan area requires more judges, court personnel and different procedures than does a thinly-populated area. The Legislature has traditionally met the growing judicial needs of an area by statutes which apply only to individual counties, judicial districts or even divisions within districts. But these statutes have not been held to be "local or special" within the meaning of Amendment 14, since they were a part of a judicial system for the entire state and were based upon reasonable considerations such as population, case load, transportation and other non-discriminatory factors or classifications.

*Id.* at 405.

█ In arguing the judicial system is not uniform throughout the state, Pulaski County points to various court personnel and expense statutes enacted by the General Assembly that apply only to specified districts and counties.[2] However, in deciding whether statutes relating to the administration of justice are local or special

---

[1] The origin of this exception is discussed in the *Littleton* case, and the *Littleton* court, citing *Waterman* v. *Hawkins*, 75 Ark. 120, 86 S.W. 844 (1905), called the exception the "Waterman rule."

[2] Those cited by the County include Ark. Code Ann. §§ 16-13-1004, 1204, 1404—1414, 1416, 1418—1419, 1504—1505, 1905—1906, 2605—2606, 2704, 2805; Ark. Code Ann. §§ 16-21-119, 145—146, 901, 2202, 1201, 1301, 1602—1603, 1701, 2202—2203; and Act 1193 of 1993.

legislation, the court in *Littleton* established the following test:

> We will continue to hold that statutes designed to meet the judicial needs of an area on a non-discriminatory basis are a part of a judicial system for the entire state and are not local or special within the meaning of Amendment 14, *even though such statutes may apply only to individual counties, judicial districts or divisions within districts . . . . The limited application of the statute must be non-discriminatory and bear a reasonable relation to the subject matter of the legislation.* (Emphasis added.)

*Id.* at 406.

Recognizing the foregoing rule in *Littleton*, Pulaski County expands its argument by contending the General Assembly's enactments relating to the administration of justice are discriminatory, and those laws place an unequal burden on the respective counties. In support of its argument, the County points to state audit reports of thirty-one counties that, it asserts, show the administration of justice is a substantial cost to some counties, but in others, no costs are underwritten by general county funds. As an example, Pulaski County argues this evidence reflects that in 1991, it was required to spend $3,373,493.38 of its general funds since the amount of court-related revenues it was authorized to collect was insufficient to pay for the court-related services. On the other hand, Pulaski County claims that, for the same period, Madison County funded its judicial system without using county funds because it had accumulated a surplus of court-related revenues which were more than enough to cover court services. In other terms, Pulaski County says it spent more than $10.00 in per capita *costs* to deliver services to the judicial system, but Madison County actually accrued over $10.00 per capita *income* after its court services were delivered.

■ Pulaski County's argument fails for at least two reasons. One, as previously discussed above, this court in *Littleton* emphasized that, in its enactments, the General Assembly should strive for a uniform judicial system. In meeting this objective, however, the General Assembly is not relegated solely to a cost-per-capita test as Pulaski County puts forth in its argument here. Instead, this court in *Littleton* said that, in providing for a judicial system for the entire state, the General Assembly should consider such matters as population, case load, transportation and other non-discriminatory classifications. Along this same vein, the court also opined that a densely

populated metropolitan area requires more judges, court personnel and different procedures than does a thinly populated area. *Id.* 281 Ark. at 405, 665 S.W.2d at 243.

■ The County's proof tends to ignore those factors set out in *Littleton*, and instead its evidence is limited almost exclusively to the net costs or per capita amount each county has borne in providing services for the court system.[3] A second reason for rejecting Pulaski County's argument is that, even if we accepted the County's unequal burden-of-costs analysis, the county's proof would still be lacking. For instance, the state audit reports do not cover circuit court revenues, yet they did include inapposite information pertaining to *municipal* revenues. In sum, we hold the chancellor was correct in deciding Pulaski County failed to prove the administration of justice in each county is not uniform across the state.

■■ In conclusion, we address two additional points. The first deals with the chancellor's conclusion of law that the state can constitutionally require counties to pay the expenses associated with the administration of justice and the counties must appropriate money to meet the state's requirements. Again, while this rule is generally true, we reiterate that any legislative enactment concerning the administration of justice must ensure fairness, and the factors or classification used by the General Assembly must be non-discriminatory and free from arbitrariness. Second, we note Pulaski County's mention of equal protection when discussing its local/special legislation argument, even though the County never raised any equal protection claim at trial. Pulaski County cites *Streight* v. *Ragland*, 280 Ark. 206, 655 S.W.2d 459 (1983), as its authority for raising this constitutional argument for the first time on appeal. We dispose of this point summarily, by stating that this court must presume legislation is constitutional and rationally related to achieving a legitimate governmental objective. *Id.* As we have already

---

[3] While the County contends on appeal that affidavits from the county treasurers should have been admitted pursuant to Ark. R. Evid. 102, we note that when the County proferred the affidavits below, the state put forth a hearsay objection, and the County failed to counter with a legally supportable argument. Because the County failed to raise this Rule 102 argument below, we do not consider it on appeal. Even if such affidavits were admissible, however, the affidavits, as proferred, contain information similar to that contained in the state audit reports and would therefore have little probative value.

thoroughly discussed above, the county's proof simply falls short in showing arbitrariness or an irrational basis in providing for the administration of justice throughout the state.

For the reasons above, we affirm.